MDL,TRIAL-OMAHA

# U.S. District Court
## District of Nebraska (8 Omaha)
## CIVIL DOCKET FOR CASE #: 8:20-cv-00397-RFR-SMB

Luedtke et al v. Sanofi-Aventis US LLC et al
Assigned to: Judge Robert F. Rossiter, Jr.
Referred to: Magistrate Judge Susan M. Bazis
Case in other court: District Court of Lancaster County,
                   Nebraska, CI 20-03227
Cause: 28:1332 Diversity-Product Liability

Date Filed: 10/02/2020
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Gary Luedtke**                  represented by    **David A. Domina**
*Husband and Wife*                                    DOMINA LAW GROUP
                                             2425 South 144th Street
                                             Omaha, NE 68144-3267
                                             (402) 493-4100
                                             Fax: (402) 493-9782
                                             Email: ddomina@dominalaw.com
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Juliet Andersen**             represented by    **David A. Domina**
*Husband and Wife*                                    (See above for address)
                                             *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Sanofi-Aventis US LLC**      represented by    **John A. McWilliams**
                                             CASSEM, TIERNEY LAW FIRM
                                             9290 West Dodge Road
                                             Suite 302
                                             Omaha, NE 68114-3320
                                             (402) 390-0300
                                             Fax: (402) 390-9676
                                             Email: jmcwilliams@ctagd.com
                                             *ATTORNEY TO BE NOTICED*

                                             **Michael K. Huffer**
                                             CASSEM, TIERNEY LAW FIRM
                                             9290 West Dodge Road
                                             Suite 302
                                             Omaha, NE 68114-3320
                                             (402) 390-0300
                                             Fax: (402) 390-9676

Email: mhuffer@ctagd.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sanofi US Services, Inc.**                 represented by  **John A. McWilliams**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Michael K. Huffer**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Chattem Inc.**                             represented by  **John A. McWilliams**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Michael K. Huffer**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Boehringer Ingelheim Pharmaceuticals,**    represented by  **Andrew T. Bayman**
**Inc.**                                                     KING, SPALDING LAW FIRM
                                                             1180 Peachtree Street
                                                             Atlanta, GA 30309
                                                             (404) 572-4600
                                                             Fax: (404) 572-5100
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Julia Zousmer**
                                                             KING, SPALDING LAW FIRM
                                                             1180 Peachtree Street
                                                             Atlanta, GA 30309
                                                             (404) 572-4600
                                                             Fax: (404) 572-5100
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Robert B. Friedman**
                                                             KING, SPALDING LAW FIRM
                                                             1180 Peachtree Street
                                                             Atlanta, GA 30309
                                                             (404) 572-4600
                                                             Fax: (402) 572-5100
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Pfizer Inc.**                              represented by  **Joseph G. Petrosinelli**
                                                             WILLIAMS, CONNOLLY LAW FIRM
                                                             725 12th Street, N.W.

Washington, DC 20005
(202) 434-5000
Fax: (202) 434-5029
*ATTORNEY TO BE NOTICED*

**Defendant**

**Walgreen, Co.**                              represented by   **Sarah E. Johnston**
BARNES, THORNBURG LAW FIRM -
LOS ANGELES
2029 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 284-3880
Fax: (310) 284-3894
*ATTORNEY TO BE NOTICED*

**Defendant**

**Walgreen's Boots Alliance, Inc.**            represented by   **Sarah E. Johnston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Walmart Stores, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2020 | 1 | NOTICE OF REMOVAL against Juliet Andersen, Gary Luedtke from District Court of Lancaster County, Nebraska, Case number CI 20-3227 ( Filing fee $ 400, receipt number ANEDC-4250855) with attached state court pleadings, by Attorney Michael K. Huffer on behalf of Chattem Inc., Walgreen, Co., Boehringer Ingelheim Pharmaceuticals, Inc., Sanofi US Services, Inc., Walgreen's Boots Alliance, Inc., Pfizer Inc., Sanofi-Aventis US LLC (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Huffer, Michael) (Entered: 10/02/2020) |
| 10/02/2020 | 2 | NOTICE of *Request for Location of Trial* by Attorney Michael K. Huffer on behalf of Defendants Boehringer Ingelheim Pharmaceuticals, Inc., Chattem Inc., Pfizer Inc., Sanofi US Services, Inc., Sanofi-Aventis US LLC, Walgreen's Boots Alliance, Inc., Walgreen, Co. (Huffer, Michael) (Entered: 10/02/2020) |
| 10/02/2020 | 3 | UNOPPOSED MOTION to Stay by Attorney Michael K. Huffer on behalf of Defendants Boehringer Ingelheim Pharmaceuticals, Inc., Chattem Inc., Pfizer Inc., Sanofi US Services, Inc., Sanofi-Aventis US LLC, Walgreen's Boots Alliance, Inc., Walgreen, Co..(Huffer, Michael) (Entered: 10/02/2020) |
| 10/05/2020 | 4 | TEXT NOTICE OF JUDGES ASSIGNED: Judge Robert F. Rossiter, Jr. and Magistrate Judge Susan M. Bazis assigned. In accordance with 28 U.S.C. 636(c)(2), the parties are notified that, if all parties consent, a magistrate judge may conduct a civil action or proceeding, including a jury or nonjury trial, subject to the courts rules and policies governing the assignment of judges in civil cases. See Fed. R. Civ. P. 73; NEGenR 1.4. (LRM) (Entered: 10/05/2020) |

| 10/05/2020 | 5 | ATTORNEY LETTER by Clerk that Attorney Andrew T. Bayman has not registered for admittance to practice nor registered for the system. If the requested action is not taken within fifteen (15) days of the date of this letter, this matter will be referred to the assigned magistrate judge for the entry of a show cause order. (LRM) (Entered: 10/05/2020) |
|---|---|---|
| 10/05/2020 | 6 | ATTORNEY LETTER by Clerk that Attorney Robert B. Friedman has not registered for admittance to practice nor registered for the system. If the requested action is not taken within fifteen (15) days of the date of this letter, this matter will be referred to the assigned magistrate judge for the entry of a show cause order. (LRM) (Entered: 10/05/2020) |
| 10/05/2020 | 7 | ATTORNEY LETTER by Clerk that Attorney Julia Zousmer has not registered for admittance to practice nor registered for the system. If the requested action is not taken within fifteen (15) days of the date of this letter, this matter will be referred to the assigned magistrate judge for the entry of a show cause order. (LRM) (Entered: 10/05/2020) |
| 10/05/2020 | 8 | ATTORNEY LETTER by Clerk that Attorney Joseph G. Petrosinelli has not registered for admittance to practice nor registered for the system. If the requested action is not taken within fifteen (15) days of the date of this letter, this matter will be referred to the assigned magistrate judge for the entry of a show cause order. (LRM) (Entered: 10/05/2020) |
| 10/05/2020 | 9 | ATTORNEY LETTER by Clerk that Attorney Sarah E. Johnston has not registered for admittance to practice nor registered for the system. If the requested action is not taken within fifteen (15) days of the date of this letter, this matter will be referred to the assigned magistrate judge for the entry of a show cause order. (LRM) (Entered: 10/05/2020) |
| 10/05/2020 | 10 | TEXT NOTICE REGARDING CORPORATE DISCLOSURE STATEMENT by Deputy Clerk as to Defendant Sanofi-Aventis US LLC. Pursuant to Fed. R. Civ. P. 7.1, non-governmental corporate parties are required to file Corporate Disclosure Statements (Statements). The parties shall use the form Corporate Disclosure Statement, available on the Web site of the court at http://www.ned.uscourts.gov /forms/. If you have not filed your Statement, you must do so within 15 days of the date of this notice. If you have already filed your Statement in this case, you are reminded to file a Supplemental Statement within a reasonable time of any change in the information that the statement requires.(LRM) (Entered: 10/05/2020) |
| 10/05/2020 | 11 | TEXT NOTICE REGARDING CORPORATE DISCLOSURE STATEMENT by Deputy Clerk as to Defendant Sanofi US Services, Inc. Pursuant to Fed. R. Civ. P. 7.1, non-governmental corporate parties are required to file Corporate Disclosure Statements (Statements). The parties shall use the form Corporate Disclosure Statement, available on the Web site of the court at http://www.ned.uscourts.gov /forms/. If you have not filed your Statement, you must do so within 15 days of the date of this notice. If you have already filed your Statement in this case, you are reminded to file a Supplemental Statement within a reasonable time of any change in the information that the statement requires.(LRM) (Entered: 10/05/2020) |
| 10/05/2020 | 12 | TEXT NOTICE REGARDING CORPORATE DISCLOSURE STATEMENT by Deputy Clerk as to Defendant Chattem Inc. Pursuant to Fed. R. Civ. P. 7.1, non-governmental corporate parties are required to file Corporate Disclosure Statements (Statements). The parties shall use the form Corporate Disclosure Statement, |

| | | |
|---|---|---|
| | | available on the Web site of the court at http://www.ned.uscourts.gov/forms/. If you have not filed your Statement, you must do so within 15 days of the date of this notice. If you have already filed your Statement in this case, you are reminded to file a Supplemental Statement within a reasonable time of any change in the information that the statement requires.(LRM) (Entered: 10/05/2020) |
| 10/05/2020 | 13 | TEXT NOTICE REGARDING CORPORATE DISCLOSURE STATEMENT by Deputy Clerk as to Defendant Boehringer Ingelheim Pharmaceuticals, Inc. Pursuant to Fed. R. Civ. P. 7.1, non-governmental corporate parties are required to file Corporate Disclosure Statements (Statements). The parties shall use the form Corporate Disclosure Statement, available on the Web site of the court at http://www.ned.uscourts.gov/forms/. If you have not filed your Statement, you must do so within 15 days of the date of this notice. If you have already filed your Statement in this case, you are reminded to file a Supplemental Statement within a reasonable time of any change in the information that the statement requires.(LRM) (Entered: 10/05/2020) |
| 10/05/2020 | 14 | TEXT NOTICE REGARDING CORPORATE DISCLOSURE STATEMENT by Deputy Clerk as to Defendant Pfizer Inc. Pursuant to Fed. R. Civ. P. 7.1, non-governmental corporate parties are required to file Corporate Disclosure Statements (Statements). The parties shall use the form Corporate Disclosure Statement, available on the Web site of the court at http://www.ned.uscourts.gov/forms/. If you have not filed your Statement, you must do so within 15 days of the date of this notice. If you have already filed your Statement in this case, you are reminded to file a Supplemental Statement within a reasonable time of any change in the information that the statement requires.(LRM) (Entered: 10/05/2020) |
| 10/05/2020 | 15 | TEXT NOTICE REGARDING CORPORATE DISCLOSURE STATEMENT by Deputy Clerk as to Defendant Walgreen, Co. Pursuant to Fed. R. Civ. P. 7.1, non-governmental corporate parties are required to file Corporate Disclosure Statements (Statements). The parties shall use the form Corporate Disclosure Statement, available on the Web site of the court at http://www.ned.uscourts.gov/forms/. If you have not filed your Statement, you must do so within 15 days of the date of this notice. If you have already filed your Statement in this case, you are reminded to file a Supplemental Statement within a reasonable time of any change in the information that the statement requires.(LRM) (Entered: 10/05/2020) |
| 10/05/2020 | 16 | TEXT NOTICE REGARDING CORPORATE DISCLOSURE STATEMENT by Deputy Clerk as to Defendant Walgreen's Boots Alliance, Inc. Pursuant to Fed. R. Civ. P. 7.1, non-governmental corporate parties are required to file Corporate Disclosure Statements (Statements). The parties shall use the form Corporate Disclosure Statement, available on the Web site of the court at http://www.ned.uscourts.gov/forms/. If you have not filed your Statement, you must do so within 15 days of the date of this notice. If you have already filed your Statement in this case, you are reminded to file a Supplemental Statement within a reasonable time of any change in the information that the statement requires.(LRM) (Entered: 10/05/2020) |
| 10/05/2020 | 17 | LETTER by Clerk regarding Notice of Removal 1 with copy of docket sheet to Multidistrict Litigation Panel Office. (LRM) (Entered: 10/05/2020) |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

GARY LUEDTKE and JULIET ANDERSEN, )           CASE NO.
Husband and Wife, )

                    Plaintiffs, )

v. )

SANOFI-AVENTIS US LLC; )
SANOFI US SERVICES, INC.; )
CHATTEM INC.; )
BOEHRINGER INGELHEIM )
PHARMACEUTICALS, INC.; )
PFIZER INC.; )
WALGREEN, CO.; )
WALGREEN'S BOOTS ALLIANCE, INC.; )
and WALMART STORES, INC., )

                    Defendants. )

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Sanofi-Aventis U.S. LLC ("Sanofi-Aventis"), Sanofi US Services Inc. ("Sanofi US"), Chattem, Inc. ("Chattem"), Boehringer Ingelheim Pharmaceuticals, Inc. ("BI"), Pfizer Inc. ("Pfizer"), Walgreen Co., and Walgreens Boots Alliance, Inc. (collectively, "Removing Defendants"), hereby give notice of removal of this action, *Luedtke, et al.*, *v. Sanofi-Aventis U.S. LLC*, *et al.*, Case No. CI 20-3227, from the District Court in and for Lancaster County, Nebraska to the United States District Court for the District of Nebraska.[1] As grounds for removal, Removing Defendants state as follows:

---

[1] Defendant Walmart Stores, Inc. was served on September 8, 2020 and consents to removal. By consenting to removal, Defendants expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process.

## INTRODUCTION

1.      This action is one of many related lawsuits filed against manufacturers and distributors of Zantac (ranitidine) relating to cancers allegedly caused by the drug.  On February 6, 2020, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multidistrict Litigation ("MDL") in the Southern District of Florida for pretrial coordination of cases like this one—*i.e.*, cases "in which plaintiffs allege that they developed cancer as a result of NDMA formed from Zantac."  *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2020 WL 582134, at *2 (J.P.M.L. 2020). The JPML found that centralizing these cases for pretrial purposes "will eliminate duplicative discovery; prevent inconsistent rulings . . . and conserve the resources of the parties, their counsel, and the judiciary."  *Id.*  To date, well over 400 actions have been transferred to the Zantac MDL, with more (including this action) surely to follow.

2.      None of the Removing Defendants named in these ranitidine-related cases is a citizen of Nebraska.

3.      Thus, the basis for removal here is materially identical to the basis for federal jurisdiction over dozens of substantially similar ranitidine-related cases previously transferred to the MDL: there is complete diversity of citizenship between Plaintiffs and Defendants.

## BACKGROUND

4.      On September 4, 2020, Plaintiffs Gary Luedtke and Juliet Andersen, husband and wife, filed their Complaint in the District Court in and for Lancaster County, Nebraska against eight entities that Plaintiffs allege are current and former manufacturers, distributors, and retailers of Zantac.  The thrust of this Complaint—like others in the MDL—is that Mr. Luedtke ingested Zantac and, as a direct and proximate result, developed cancer, in this case prostate cancer.  Compl. ¶ 1.  A copy of the Complaint is attached as Exhibit 1.  Specifically, Plaintiffs allege that

Defendants "tested, developed, designed, manufactured, marketed, sold, distributed and promoted Zantac® products which were defective and unreasonably dangerous[.]" *Id.* ¶ 62.

5.      As Plaintiffs acknowledge, none of the named Defendants is a citizen of Nebraska. *Id.* ¶¶ 6, 6.1-6.8.

6.      The Complaint asserts seven theories of liability against all Defendants: (1) strict liability—failure to warn; (2) strict liability in tort; (3) negligence; (4) breach of express warranty; (5) breach of implied warranties; (6) violation of the Nebraska Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301 *et seq.* and (7) violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 *et seq.*  *Id.* ¶¶ 60-116.

7.      Defendants received the Complaints through service as follows:

- Defendants Sanofi-Aventis, Sanofi US, and Chattem received the Complaint through service on September 14, 2020.

- Defendant BI received the Complaint through service on September 15, 2020.

- Defendant Pfizer received the Complaint through service on September 8, 2020.

- Defendants Walgreen Co. and Walgreens Boots Alliance, Inc., received the Complaint through service on September 8, 2020.

8.      Pursuant to 28 U.S.C. § 1446(a), copies of the state court docket sheet, all process, pleadings, orders, and other documents on file with the District Court of Lancaster County are attached hereto as Exhibit 2.

### VENUE AND JURISDICTION

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 107, 1391, 1441(a), and 1446(a) because the District Court of Lancaster County, Nebraska, where the Complaint was filed, is a state court within the District of Nebraska.

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because (1) there is complete diversity between Plaintiffs and Defendants; (2) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (3) all other requirements for removal have been satisfied.

## BASIS OF REMOVAL

**I.     There Is Complete Diversity of Citizenship Between Plaintiffs and All Defendants.**

11.     There is complete diversity of citizenship here because Plaintiffs are Nebraska citizens, and all eight named Defendants are citizens of states other than Nebraska.  Compl. ¶¶ 4, 6, 6.1-6.8.

12.     Plaintiffs allege that they reside and sustained injuries in Nebraska.  *Id*.  Therefore, upon information and belief, Plaintiffs are Nebraska citizens.  *See Altimore v. Mount Mercy Coll*., 420 F.3d 763, 768 (8th Cir. 2005) ("Citizenship is determined by a person's physical presence in a state along with his intent to remain there indefinitely.").

13.     For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  A limited liability company is a citizen of every state in which its members are citizens.  *Jet Midwest Int'l Co., Ltd. v. Jet Midwest Grp., LLC*, 932 F.3d 1102, 1104 (8th Cir. 2019).

14.     Defendant Sanofi-Aventis U.S. LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Bridgewater, New Jersey.  Compl. ¶ 6.1.  The sole member of Sanofi-Aventis U.S. LLC is Sanofi US Services Inc., a Delaware corporation with its principal place of business in New Jersey.  Defendant Sanofi-Aventis U.S. LLC is, therefore, a citizen of Delaware and New Jersey.

15. Defendant Sanofi US Services Inc. is a corporation organized under the laws of Delaware with its principal place of business in Bridgewater, New Jersey. *Id.* ¶ 6.2. Sanofi US Services Inc. is, therefore, a citizen of Delaware and New Jersey.

16. Defendant Chattem, Inc. is a corporation organized under the laws of Tennessee with its principal place of business in Chattanooga, Tennessee. *Id.* ¶ 6.3. Chattem, Inc. is, therefore, a citizen of Tennessee.

17. Defendant Boehringer Ingelheim Pharmaceuticals, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Ridgefield, Connecticut. *Id.* ¶ 6.4. Boehringer Ingelheim Pharmaceuticals, Inc. is, therefore, a citizen of Delaware and Connecticut.

18. Defendant Pfizer Inc. is a corporation organized under the laws of Delaware with its principal place of business in New York, New York. Pfizer Inc. is, therefore, a citizen of Delaware and New York.

19. Defendant Walgreen Co. is a corporation organized under the laws of Illinois with its principal place of business in Deerfield, Illinois. Walgreen Co. is, therefore, a citizen of Illinois.

20. Defendant Walgreens Boots Alliance, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Deerfield, Illinois. *Id.* ¶ 6.7. Walgreens Boots Alliance is, therefore, a citizen of Delaware and Illinois.

21. Defendant Walmart, Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas. *Id.* ¶ 6.8. Walmart, Inc. is, therefore, a citizen of Delaware and Arkansas.

22.     Because Plaintiffs are citizens of Nebraska and all Defendants are citizens of states other than Nebraska, complete diversity of citizenship exists between Plaintiffs and Defendants. *See* 28 U.S.C. §§ 1332(a).

## II.     The Amount in Controversy Exceeds $75,000.

23.     Plaintiffs' claims also satisfy the amount-in-controversy requirement set forth in 28 U.S.C. § 1332(a).

24.     "[A] defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

25.     Where the complaint does not establish a specific amount in controversy, it may be "facially apparent that the claims are likely above the jurisdictional minimum." *Gonzalez v. Eagle Parts & Prods.*, 2007 WL 675108, at *4 (D. Neb. Mar. 5, 2007) (citations and internal quotations omitted).  In *Gonzalez*, the plaintiff sought a minimum of $33,500 for medical expenses, future medical expenses, around-the-clock home health care expenses, and amounts for disability and pain and suffering. *Id.*  The court found that "based on the nature of the plaintiff's claim, together with the prayer for damages and other evidence in the record," the plaintiff's damages exceeded the jurisdictional minimum. *Id.* at *5.  For similar reasons, that is also the case here.

26.     Plaintiffs allege that they have "suffered great mental anguish" and allege that Mr. Luedtke has "sustained personal injuries, including illness, disease, need for extensive medical treatment intervention and care," and "special damages includ[ing] lost earnings and lost future earnings, medical care costs and expenses, costs for medications and treatments, travel and related expenses for medical care[.]"  Compl. ¶¶ 69, 120.  Plaintiffs further allege that Mr. Luedtke contracted cancer and is "both temporarily and permanently impaired and suffers physical and

emotional pain and anguish which will be ongoing and lifelong." *Id.* ¶ 119. Ms. Andersen claims loss of consortium due to the "loss of her husband's care, comfort, companion, society, support, services, advice, counsel, love and affection and caregiver's injuries." *Id.* ¶ 122. Accordingly, plaintiffs also request attorneys' fees. *Id.* ¶¶ 120, 125. It is thus clear that the alleged amount in controversy exceeds $75,000, exclusive of interest and costs.

27.     Courts have found that allegations of serious injury in product liability actions, including allegations of cancer like those Plaintiffs make here, support an inference that the amount-in-controversy requirement has been met. Indeed, in another Zantac case in which the plaintiff similarly claimed cancer as an injury, a federal court in the District of Nevada recently denied a motion to remand where the amount in controversy was not alleged, finding that the requirement was satisfied on the face of the complaint by the nature of the injury as well as, in part, the plaintiff's demand for attorneys' fees. *See Brooks v. Sanofi S.A.*, 2020 WL 1847682 (D. Nev. Apr. 13, 2020); *see also, e.g.*, *Gonzalez*, 2007 WL 675108, at *4-5 (denying motion to remand when plaintiff alleged medical expenses, future medical expenses, around-the-clock home health care expenses, and amounts for disability and pain and suffering); *Jones v. Canyon Creek Apartments*, 2018 WL 5410968, at *2 (W.D. Mo. Oct. 29, 2018) (citations omitted) (denying motion to remand when plaintiffs alleged serious and substantial medical expenses in the present and future, and damages for pain, emotional distress, loss of capacity to provide assistance to their households, lost opportunities, and loss of enjoyment of life); *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 241 (5th Cir. 2015) (holding that serious medical injuries alleged, including cancer, supported deduction that amount-in-controversy requirement was met, and reversing district court's rationale for remanding case); *Gates v. 84 Lumber Co.*, 2015 WL 2345427, at *1 (S.D. Ala. May 14, 2015) (inferring that amount-in-controversy requirement was met when alleged

injury included cancer); *Caire v. Murphy Oil USA, Inc.*, 2013 WL 5350615, at *2 (E.D. La. Sept. 23, 2013) (the "severity" of a cancer diagnosis falls within the "spectrum of damages" that meet the minimum for diversity jurisdiction).

28.     Jury awards in cases involving similar allegations and requested damages further confirm that the amount in controversy meets the jurisdictional threshold.  For example, in *Allen v. Takeda*, the jury found that a prescription medication caused the plaintiff's bladder cancer and awarded him more than $1 million in compensatory damages for pain and suffering and medical costs.  Jury Verdict, *Allen v. Takeda Pharma. Int'l, Inc.*, 2014 WL 1394617 (Apr. 7, 2014 W.D. La.).  In another federal court case in this Circuit, a jury awarded $225,000 in compensatory damages to a plaintiff on her claim that a pharmaceutical company negligently failed to warn consumers that its product could cause a severe jawbone disease.  *Baldwin v. Novartis Pharm. Corp.*, 2012 WL 1356336 (W.D. Mo. April 6, 2012).

29.     Finally, in the hundreds of personal injury cases pending in the Zantac MDL, each plaintiff either expressly claims damages in excess of $75,000 or has impliedly done so by filing a lawsuit in federal court and invoking federal diversity jurisdiction.  Over 150 plaintiffs in these cases allege that they have been diagnosed with prostate cancer, the same type of cancer that Mr. Luedtke here claims.  *See, e.g.*, *Sobieszczyk v. Boehringer Ingelheim Pharm., Inc.*, 9:20-cv-80189 (S.D. Fla.); *Pinkney v. Boehringer Ingelheim Pharm., Inc.*, 9:20-cv-80301 (S.D. Fla.).  Like those cases, this case meets the requirements for federal diversity jurisdiction.

## III.     All Other Removal Requirements Are Satisfied.

30.     The Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), and all properly served Defendants join in the removal.

31.     Defendants received the Complaints through service as follows:

- Defendants Sanofi-Aventis, Sanofi US, and Chattem received the Complaint through service on September 14, 2020.

- Defendant BI received the Complaint through service on September 15, 2020.

- Defendant Pfizer received the Complaint through service on September 8, 2020.

- Defendants Walgreen Co. and Walgreens Boots Alliance, Inc., received the Complaint through service on September 8, 2020.

32.     Thus, Removing Defendants file this Notice of Removal within 30 days of their receipt through service of the Complaint. *Couzens v. Donohue*, 854 F.3d 508, 514 (8th Cir. 2017) ("All defendants in a suit who have been properly joined and served must consent to removal.").

33.     Additionally, the following properly served Defendant consents to removal: Walmart Stores, Inc.[2]  28 U.S.C.§ 1446(b)(2)(A); *Couzens*, 854 F.3d at 514.

34.     The Removing Defendants are providing Plaintiffs with written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d).

35.     Pursuant to 28 U.S.C. § 1446(d), the Removing Defendants are filing a copy of this Notice of Removal with the Clerk of the Lancaster County, Nebraska court.

36.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders and other papers filed in the state court action—as available from the state court docket or otherwise made available to the Removing Defendants at the time of filing this Notice—are attached hereto as Exhibit 2.

37.     By filing this Notice of Removal, Removing Defendants do not waive any defense that may be available to them and reserve all such defenses, including but not limited to those related to service of process and lack of personal jurisdiction.  If any question arises regarding the

---

[2] Walmart Stores, Inc. received the Complaint through service on September 8, 2020.

propriety of the removal to this Court, Removing Defendants request the opportunity to present a brief oral argument in support of their position that this case has been properly removed.

## CONCLUSION

WHEREFORE, Removing Defendants give notice that the matter bearing Case No. CI 20-3227 pending in the District Court in and for Lancaster County, Nebraska, is removed to the United States District Court for the District of Nebraska, and request that this Court retain jurisdiction for all further proceedings in this matter.

Dated this 2nd day of October, 2020.

By: */s/ Michael K. Huffer*
Michael K. Huffer – 18087
John A. McWilliams – 25798
**CASSEM TIERNEY ADAMS
GOTCH & DOUGLAS**
9290 West Dodge Road, Suite 302
Omaha, Nebraska 68114-3320
Tel. (402) 390-0300
mhuffer@ctagd.com
jmcwilliams@ctagd.com

*Attorneys for Defendants
Sanofi-Aventis U.S. LLC, Sanofi US
Services Inc., and Chattem, Inc.*

*/s/ Andrew T. Bayman (w/permission)*
Andrew T. Bayman (*pro hac vice*
forthcoming)
Robert B. Friedman (*pro hac vice*
forthcoming)
Julia Zousmer (*pro hac vice*
forthcoming)
**KING & SPALDING LLP**
1180 Peachtree Street
Suite 1600
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: abayman@kslaw.com
Email: rfriedman@kslaw.com
Email: jzousmer@kslaw.com

*Attorneys for Defendant Boehringer
Ingelheim Pharmaceuticals, Inc.,*


*/s/ Joseph G. Petrosinelli (w/permission)*
Joseph G. Petrosinelli (*pro hac vice*
forthcoming)
**WILLIAMS & CONNOLLY LLP**
725 12th Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: jpetrosinelli@wc.com

*Attorney for Defendant Pfizer Inc.*


*/s/ Sarah E. Johnston (w/permission)*
Sarah E. Johnston (*pro hac vice*
forthcoming)
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 284-3880
Facsimile: (310) 284-3894
Email: sjohnston@btlaw.com

*Attorney for Defendants Walgreen Co.
and Walgreens Boots Alliance, Inc.*

# EXHIBIT 1

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200003227
Transaction ID: 0011630130
Filing Date: 09/04/2020 12:44:31 PM CDT

**District Court, Lancaster County, Nebraska**

| | |
|---|---|
| **Gary Luedtke and Juliet Andersen, Husband and Wife,** | **Case No.: CI 20-_____** |
| **Plaintiffs,** | |
| **v.** | **Complaint Jury Demand** |
| **Sanofi-Aventis US LLC; Sanofi US Services, Inc.; Chattem Inc.; Boehringer Ingelheim Pharmaceuticals, Inc.; and Pfizer, Inc., Walgreen, Co, Walgreen's Boots Alliance, Inc., Walmart Stores, Inc.** | **And Trial Location Selection** |
| **Defendants.** | |

## Contents

| | |
|---|---|
| Overview | ¶1 |
| Jurisdiction, Venue, Parties | ¶4 |
| Factual Allegations | ¶14 |
|     A.    Plaintiff's Use of Zantac® | ¶23 |
|     B.    Zantac® OTC | ¶26 |
|     C.    NDMA Is Dangerous | ¶49 |
|     D.    Failures of Defendants to Disclose | ¶55 |
| First Theory: Strict Liability (Failure to Warn) | ¶60 |
| Second Theory: Strict Liability in Tort | ¶70 |
| Third Theory: Negligence | ¶85 |
| Fourth Theory: Breach of Express Warranty | ¶93 |
| Fifth Theory: Breach of Implied Warranties | ¶103 |
| Sixth Theory: *Deceptive Trade Practices Act* | ¶108 |
| Seventh Theory: Nebraska *Consumer Protection Act* | ¶113 |
| First Claim: Mr. Luedtke | ¶117 |
| Second Claim: Mrs. Andersen | ¶121 |
| Request for Relief; Jury Demand | ¶123; ¶127 |

Plaintiffs allege:

## Overview

1.      Gary Luedtke and Juliet Andersen, husband and wife, sue for Mr. Luedtke's personal injuries and Ms. Andersen's derivative consortium claim.  Plaintiff contracted prostate cancer (Gleason 3=4=7), diagnosed on or about August 9, 2012. He could not discover the cause of his cancer until 2020 after Zantac®  was declared to be carcinogenic and ordered pulled from the market by the U.S. Food & Drug Administration on April 1, 2020. Plaintiff used over time counter brand name Zantac® from approximately January 2000 until 2017. His cancer was caused by   Zantac®.  Zantac® has been recalled by the U.S. Food and Drug Administration because it causes cancer in human users.  It is classified as probably carcinogenic by the World Health Organization, the International Agency for the Research of Cancer, the United States Food and Drug Administration, and the governing bodies of numerous other governments.

2.       Zantac®  was partially pulled from the shelves in the United States about March 20, 2020 after information surfaced in September 2019 that the substances within Ranitidine are highly carcinogenic. On April 1, 2020 all Zantac®  products were ordered recalled from all sources by the FDA.[1] Earlier, on October 18, 2019, Defendant Sanofi-Aventis US LLC announced publicly that Zantac® 150, Zantac® 150 Cool Mint, Zantac® 75 (OTC Products)  were voluntarily recalled by it following  an alert by the FDA on September 13, 2019 that "some ranitidine medicines, including Zantac® OTC, could contain NDMA at low levels and asked manufacturers to conduct testing."[2]

3.      Plaintiffs sue for special and general damages.

## Jurisdiction, Venue, Parties

---

[1] FDA Public Announcement at https://www.fda.gov/news-events/press-announcements/fda-requests-removal-all-ranitidine-products-zantac-market

[2] Sanofi company announcement 10.18.2019 posted by FDA at https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/sanofi-provides-update-precautionary-voluntary-recall-zantac-otc-us

1094935

4. The District Court has subject matter jurisdiction pursuant to *Neb Rev Stat* § 24-302. Venue is proper in Lancaster County, Nebraska where Plaintiffs reside, the Zantac® medication was sold and ingested, and where substantial part of the activity giving rise to this claim occurred. *Neb Rev Stat* § 25-403.01.

5. Plaintiffs are Gary Luedtke, born in 1955 (where used in singular "Plaintiff refers to him) and his spouse Juliet Andersen. Plaintiffs were married in 1986. Plaintiff suffers from cancer caused by Zantac®.

6. The Defendants are:

6.1. Sanofi-Aventis US LLC, a Delaware limited liability company. Its principle place of business is at 55 Corporate Drive, Bridgewater, New Jersey, 08807. It is believed to be a wholly owned subsidiary of a French company named Sanofi.

6.2. Sanofi US Services Inc., a Delaware corporation. Its principle place of business is also at 55 Corporate Drive, Bridgewater, New Jersey, 08807. It is also believed to be a wholly owned subsidiary of the French company, Sanofi.

6.3. Chattem Inc., a Tennessee corporation with its principle place of business at 1715 West 38th Street, Chattanooga, Tennessee, 37409. It is also believed to be a subsidiary of the French company, Sanofi.

6.4. Boehringer Ingelheim Pharmaceuticals, Inc. ("BIP"). BIP is a Delaware corporation with its principle place of business at 900 Ridgebury Road, Ridgefield, Connecticut, 06877. It is a subsidiary of the German company Boehringer Ingelheim Corporation.

6.5. Pfizer, Inc., manufactured and controlled Zantac® from at least 2000 through 2006 and became the successor to the liabilities of Warner-Lambert, Inc., which it acquired and merged into Pfizer in 2000. Pfizer through its own direct ownership after acquiring Warner-Lambert and prior to them was responsible for the marketing and distribution of Zantac® from approximately 1990 or earlier to 2006

3

when it sold the product to Defendant Boehringer Ingelheim Pharmaceuticals, Inc.  Pfizer was the original NDMA holder for OTC Zantac®.

6.6.    Walgreen's Co. is Delaware Corporation with its principle place of business at 200 Wilmot Rd, Deerfield, Illinois 60015. Walgreen's Co is a citizen of Delaware and Illinois.  Its registered agent authorized to receive process in Nebraska is: The Prentice-Hall Corporation System, Inc., Suite 1900 233 South 13th Street, Lincoln, NE 68508.

6.7.    Walgreen's Boots Alliance, Inc., is a Delaware Corporation with its principle place of business is 300 Wilmot Rd, Deerfield, Illinois 60015. Walgreen's Boots Alliance, Inc., is a citizen of Delaware and Illinois.  Walgreen's Boots Alliance, Inc., registered agent authorized to receive process in Nebraska is CSC-Lawyers Incorporating Service Company, Suite 1900, 233 South 13th Street, Lincoln, NE 68508.

6.8.    Walmart Inc., formerly f/k/a Wal-Mart Stores, Inc., is Delaware Corporation with its principle place of business at 702 SW 8th Street, Bentonville, Arkansas 72716. Walmart is a citizen of Delaware and Arkansas. Walmart's registered agent authorized to receive process in Nebraska is: CT Corporation System, 5601 South 59th Street, Suite C, Lincoln, NE 68516.

.

Praecipes for summonses are filed with this Complaint.  All other Defendants are subject to the jurisdiction of Nebraska courts because they contracted to sell and deliver Zantac® here and caused tortious injuries to Plaintiffs here.[3]  Service of process may be made as provided by the Nebraska Business Corporations Act.[4]

---

[3]  *Neb Rev Stat* § 25-536.
[4]  *Neb Rev Stat* § 21-2,212(b).

4

Sanofi-Aventis US LLC, Sanofi Services Inc. and Chattem Inc. (collectively "Sanofi" or sometimes "Sanofi Defendants") control the U.S. rights to the over-the-counter Zantac® and have do so since January 2017.[5] They are the successors in interest to BIP.

7.      The Sanofi Defendants manufactured and distributed Zantac® over the counter in the United States during this period.   Plaintiff routinely used Zantac® manufactured and distributed by the Sanofi Defendants.

8.      At relevant times between October 2006[6] and January 2017, BIP owned the U.S. rights to over-the-counter Zantac® and manufactured and distributed it in the United States during that period. Plaintiff used BIP's over-the-counter Zantac® throughout this time.

9.      Walgreen's defendants purchased ranitidine, repackaged it and or relabeled under its own brand and sold it at retail in its own stores and through its pharmacies and drug store. Walgreen's  also sold Zantac® in its stores in Nebraska and elsewhere.

10.      Walmart, Inc. purchased ranitidine, repackaged it and or relabeled under its own brand in a Sam's brand and sold it at retail in its own stores and through its pharmacies and drug store elements of its department stores. It also sold Zantac® in its stores in Nebraska and elsewhere.    All allegations apply to the "repackager" Defendants and retailers in this complaint apply to Defendant Walmart Inc.

11.      Walmart  continued to sell generic ranitidine until on or about September 26, 2019 when generic manufacture Apotex and Walmart,   voluntarily recalled all ranitidine products and removed them from the shelves

12.      AmerisourceBergen and Amneal and Apotex manufactured Ranitidine and sold and distributed it to retailers believed to include Walmart.

13.      Apotex Corporation manufactured itself or with joint venture a related

---

[5]  Pare, Mike, *Chattem adds Zantac, Dulcolax to portfolio*, Chattanooga Times Free Press (Tenn.) (Feb. 8, 2017).

[6] Boehringer Ingelheim Pharmaceuticals Inc. *Announces Agreement to Acquire Zantac from Johnson & Johnson and Pfizer Consumer Healthcare Business*, Business Wire (Oct. 12, 2006)

corporation, Apotex, Inc. a Canadian corporation and, purchased and repackaged ranitidine and relabeled it under its own brand and is believed to have done so to create the store brand for Walmart. It is believed to have supplied ranitidine to retailers including Walmart

**Factual Allegations**

14.     Plaintiff enjoyed generally good health from the time of his birth until 2014. He did have acid reflux and indigestion problems requiring antacid medications.

15.     Plaintiff used over-the-counter Zantac®, which he used when purchased in drug stores and retail outlets as marketed by the Sanofi Defendants and BIP, and before them by BIP.

16.     Plaintiff has no history of prostate cancer and no history of other cancers of the stomach or abdominal tract, intestinal or similar cancers in his family or personal background.  He has no genetic or other pre-dispositions to renal cancer.  He has generally been in reasonable control of his weight, has not suffered hypertension or been treated for prostate cancer prior to his diagnosis and has not suffered from syndromes that cause an increase in the risk of prostate cancer prior to his diagnosis.  He has not suffered from:

- von Hippel-Lindau Disease
- Birt-Hogg-Dube Syndrome
- Tuberous Chlorosis Complex
- Hereditary Papillary Renal Cell Carcinoma
- Familial Renal Cancer
- Exposure to Cadmium
- Exposure to herbicides with known associations with Renal Cancer
- Overuse of medications.
- Hypertension

17.     In August 2012, Plaintiff was diagnosed with prostate cancer.  He underwent active treatment through a complex array of 45 treatments with extensive follow up care extending into and beyond 2016.  His prospects for permanent remission are not known. Mr. Luedtke expects to live with the   threat of   recurrent cancer for the rest of his life.

6

18.     Plaintiff's illness imposed burdens upon his spouse as his caregiver.  Since his ability to engage in the activities of daily living, and his employment, were and diminished, the spousal plaintiff is deprived of her husband's care, comfort and companionship, support, services, advice, counsel, love and affection as it would be extended normally.  She was also called upon to provide emotional and physical comfort care and support and expects to be required to do so throughout his battle against cancer in his body.  Ms. Andersen claims general damages for her consortium injuries.

19.     Plaintiff's work life and personal life were disrupted by his diagnosis and treatment. His cancer diagnosis caused  depression, anxiety, sleep disturbance, loss of self-confidence, diminished ability to focus and be attentive, and disturbance of his mental health and status.

20.     Plaintiff also experienced  physical and emotional pain, illness, discomfort, and physical distress, loss of strength, diminished stamina, and general inability to perform his activities of daily living and work, on a temporary basis.  It is expected that these circumstances will be permanent, although the degree of permanence is not yet known.  Before his cancer, he had a foreseeable life expectancy of at least 19.0 years.[7] He is now permanently physically impaired.

21.      Plaintiffs' special damages   include:

21.1.   Lost earnings

21.2.   Lost earning capacity

21.3.   Medical expenses for physicians and medical institutions

21.4.   Pharmacological and pharmaceutical expenses

21.5.   Expenses for travel to and from medical care.

22.     Leave is requested to amend this Complaint to plead the precise amount of special damages incurred as of the time of the pre-trial conference, or at trial.

---

[7] U.S. Social Security Administration, https://www.ssa.gov/oact/STATS/table4c6.html

1094935

### A. Plaintiff's Use of Zantac®

23.    By 2012 Plaintiff had used Zantac® extensively.  However, had he known the risks and had they been disclosed to him and other consumers on the drug's label and through other means, he would not have used it. No Defendant disclosed to consumers that Zantac® has a critical defect that because it produces high quantities of N-Nitrosodimethylamine ("NDMA"), a chemical the World Health Organization's International Agency for Research of Cancer ("IARC") classified as "clearly carcinogenic".

24.    Plaintiff used Zantac® with his physician's knowledge as follows:

| Dates | Uses- Average | Type | Dosage | Purpose |
|---|---|---|---|---|
| From January 2000 Until 2017 | 6 days a week | Zantac® 150 Tablets<br><br>Or Ranitine Generic 150 mg (or 2, 75 mg)<br><br>– Purchased OTC | 1x/day | Antacid; prevention of indigestion |

25.    Throughout the time Plaintiff used Zantac® he used the drug products in accordance with label directions and for the  intended purposes. He did not alter or modify the Zantac® products and used them as packaged and sold, with no changes.

### B. Zantac®

26.    Until recalled from the market in 2020, for many years, Zantac® was the most popular over-the-counter medication, also available in prescription dosages, to decrease stomach acid, reduce heartburn and acid indigestion, treat or ameliorate the anguish of gastric ulcers, and reduce the adverse consequences of "sour" stomach and other gastro intestinal conditions.[8] Zantac® was developed in 1983 and became available as a

---

[8] Richard Wright, M.D. *How Zantac Became the Best-Selling-Drug in History* 16(4) J.HealthcareMarketing24 (Winter 1996)

non-prescription drug in some dosages in 1995. Its generic version became available the following year.

27.     Zantac® is the Sanofi and brand name version of the drug ranitidine. Zantac® was first sold in the United States in 1983.  Within three (3) years, its sales volume reportedly exceeded $1.0 billion in sales.[9]  Zantac® remained among the most widely used and popular tablet brands of antacid in the United States through 2018 and into 2019.[10] Plaintiffs believe this likely continued until the product was recalled in 2020.

28.     Zantac® is widely referred to as an antacid and used for this purpose without consumers focusing on the distinction between neutralizing acids in the stomach and preventing their production.[11]

29.     Over-the-counter Zantac® like that used by Plaintiff is sold in the form of tablets containing dosages of 75 mg (Zantac® 75) and 150 mg dosages.  The product is also prescribed for use by injection.  Zantac® has an adverse, clearly carcinogenic effect on the human body.  When ingested, Zantac® produces within the body quantities of a deadly chemical known as N-Nitrosodimethylamine (NDMA).  The World Health Organization described this medication as clearly carcinogenic.[12]

30.     Ranitidine is called an H2-receptor antagonist.  It was commonly prescribed for gastro esophageal reflex disease (GERD) as well as for peptic ulcers and other matters. H2-receptor antagonist (H2RAs) selectively block the histamine-2 receptor in gastro parietal cells.  This produces decreased production of gastric acid.[13]

31.     Ranitidine produces NDMA in the body.   Testing by independent laboratories in 2019 established dramatically elevated levels of NDMA produced in the

---

[9] *Id.*

[10] While Zantac is routinely referred to as an antacid, it actually has a mode of action that works by reducing the amount of acid the stomach makes, instead of by neutralizing acids already produced by the stomach.  Ranitidine, oral tablet, health line, https://www.healthline.com/health/ranitidine-oral-tablet.

[11] *See Leading Antacid Tablet Brands in the United States in 2018 Based on Sales,* Statista (https://www.statista.com/statistics/194544/leading-us-antacid-tablet-brands-in-2013-based-on-sales/).

[12] RG Liteplo et al. *Concise International Chemical Assessment Document 38*, N- Nitrosodimethylamine, World Health Organization (2002), https://www.who.int/ipcs/publications/cicad/en/cicad38.pdf.

[13] *Id.*

9

bodies of patients who used Zantac® and other Ranitidine products. N-Nitrosodimethylamine (NDMA) is an organic chemical known to be in a family of potent carcinogens, the dangers of which to human health have been recognized since at least 1979 when researchers observed that it caused cancer in nearly every laboratory animal tested. NDMA is so dangerous that it is no longer produced or commercially used in the United States except for research, and then only as a poison.

32.    The International Agency for Research of Cancer (IARC) classified NDMA as a group two (2) "probably carcinogenic to humans" substance.[14] The US Environmental Protection Agency also classified NDMA as a probable human carcinogen. As early as 1980 products with unsafe levels of and DMA were recalled by manufacturers or at the direction of the FDA.

33.    In 2014, research scientists conducting a case control study in Newfoundland and Labrador in Ontario Canada found an increased risk of gastrointestinal cancer in humans ingesting Zantac® and ranitidine.[15] Doses of ranitidine in combination with nitrite produce DNA fragmentation in animal studies[16], and adverse consequences in humans were found by researches.[17]

34.    On July 13, 2018, heart medications found to produce unsafe levels of NDMA in the human body were recalled by the FDA because they did not meet FDA safety standards.[18] These recalls stemmed from detection of an impurity called N-

---

[14] IARC, Overall Evaluations of Carcinogenicity: An Updating of IARC Monographs Volumes 1-42, *IARC Monograph Evaluation Carcinogenic Risks Human Supplement 7, 1-440 (1987)*.

[15] ZHU, Y et al. Dietary N-Nitroso compounds and risk of colorectal cancer: A case control study in Newfoundland and Labrador in Ontario Canada, 111 British Journal of Nutrition 1109-117 (2014).

[16] Brambilla, G. et al., Genotoxic effects in rodents given oral doses of ranitidine and sodium nitrite, for carcinogenesis 1281-1285 (1983)

[17] Zeng & Mitch, WA, *Oral Intake of Ranitidine Increases Urinary Excretion of N-Nitrosodimethylamine*, 6 carcinogenesis 625-634 (2016).

[18] FDA Announcement, July 13, 2018, https://www.fda.gov/news-events/press-announcements/fda-announces-voluntary-recall-several-medicines-containing-valsartan-following-detection-impurity

Nitrosodimethylamine (NDMA) -- a probable human carcinogen -- in the valsartan active pharmaceutical ingredient (API) the affected products contained.[19]

35.     In Autumn of 2019, testing laboratories Valisure LLC and Valisure RX LLC (together "Valisure") detected extraordinarily high NDMA levels in all lots of ranitidine tested across multiple manufacturers of products including Zantac®.[20]  Valisure notified the FDA of its filings September 13, 2019.  Valisure is an online pharmacy licensed in at least thirty-eight (38) states. It has an analytical laboratory that it is accredited by the International Organizations for Standardization.  Valisure is also registered with the Drug Enforcement Agency of the United States and the US Food and Drug Administration. Valisure's test established that "ranitidine can react with itself in standard analysis conditions…at a high efficiency to produce NDMA dangerous levels well in excess of the permissible daily intake limit for this probable carcinogen."[21]

36.     The FDA announced a human permissible intake maximum limit of 96 ng of NDMA per day.[22]  Yet, more than thirty (30) years ago the Agency for Toxic Substances and Disease Registry warned that NDMA, in high quantities, was dangerous and the exposures to NDMA caused liver damage in laboratory animals and usually resulted in internal bleeding and death.[23]

37.     The Valisure testing, using gas chromatography and mass spectrometry ("GC/MS") testing as prescribed by the FDA detected 2,511,469 ng of NDMA per 150 mg tablet of Zantac®.  The FDA protocol detected NDMA in each Zantac® tablet at an order of magnitude of more than 25,000 times the FDA permissible intake limit.

---

[19]  AAFP NEWS STAFF, July 25, 2018, https://www.aafp.org/news/health-of-the-public/20180725valsartan.html

[20] Valisure Citizen Petition to FDA ("Citizen Petition") at 6 available, https://hbw.pharmaintelliegence.informa.com/~/media/Supporting%20Documents/Rose%20Sheet/2019/09/9%20Sept%202019%20Valisure%20Ranitidine%20Petition.pdf

[21] *Id.*

[22] *FDA Updates and Press Announcements on Angiotension II Receptor Blocker (ARB) Recalls*, FDA (updated August 28, 2019) (Setting "Interim Limits for NDMA")

[23] Agency for Toxic Substances & Disease Registry, *Public Health Statement for N- Nitrosodimethylamine 2* (December 1989), https://www.atsdr.cdc.gov/ToxProfiles/tp141-c1-b.pdf.

1094935

38.     The National Institutes of Health noted that the typical recommended dose of ranitidine for therapy of peptic ulcer disease in adults is 150 mg twice daily or 350 mg once nightly for four (4) to eight (8) weeks with maintenance doses of 150 mg once daily.[24]

39.     This means that a user of the Zantac® medications like the Plaintiff would, over the course of eight (8) weeks when using the substance for its intended purpose to treat a peptic ulcer would be exposed to more than 280,000,000 ng (0.28 grams) of NDMA. A consumer like Plaintiff taking 150 mg maintenance doses of Zantac® is exposed to 889,000,000 ng (0.889 grams) of NDMA over the course of a single year. Yet, the NDMA permissible intake limit is 96 mg per day or 0.000034 grams per year. Plaintiff was a foreseeable human user of Zantac®. The product he used reached him in the same condition it left its manufacturer; it was used as intended for intended purposes.

40.     When Valisure tested Zantac® in conditions simulating the human stomach, it detected NDMA in quantities as a high as 304,500 ng per tablet.  This would be approximately more than 3,150 times the amount that can be safely ingested daily.

41.     The dangers of Zantac® became publicly known on or about September 13, 2019 when the Valisure filings were made and disclosed, and the FDA registered and responded to them. Nonetheless, some countries and the United States took steps to protect the public from ranitidine before the US FDA acted, Health Canada, the nation's health department, compelled the cessation of distributions in Canada in September 2019.[25]

42.     Other nations including Germany, Switzerland, Australia and Italy initiated drug recalls months before the United States acted.  Singapore, Qatar, Pakistan all halted sales.[26]

---

[24] *Drug Record:  Ranitidine, Regular Type National Institutes of Health* (updated July 1, 2019), https://livertox.nih.gov/ranitidine.htm.

[25] *Information Update – Health Canada requests that companies stop distributing ranitidine drugs in Canada while it assesses NDMA:  Some products being recalled*, Cision Canada (September 17, 2019) https://www.newswire.ca/news-releases/information-update-health-canada-requests-that-companies-stop-distributing-ranitidine-drugs-in-canada-requests-that-companies-stop-distributing-ranitidine-drugs-in-canada-while-it-assesses-ndma-some-products-being-recalled-821911993.html

[26] Tom Gallen, *Ranitidine Recalls Begin In Europe As Regulators Take Action,* Pharma Intelligence (Sept. 18, 2019), https://hbw.pharmaintelligence.informa.com/RS149219/Ranitidine-Recalls-Begin-In-Europe-As-Regulators-Take-Action; *Pharmacies pull heartburn meds over contamination concerns,* Uutiset (Sept. 19, 2019),

43.     Some private companies promptly stopped distribution of its product, worldwide.  This was true of Sandoz, a unit of Novartis AG.[27]

44.     The FDA's statement alerting patients and healthcare professionals of NDMA found in ranitidine samples was issued September 13, 2019.  It alerted Defendants and all in the public of the concerns.[28]

45.     Even after September, the FDA was slow to act and did not recall the medication until March 2020.  In the interim, the FDA referred to an "impurity" in Zantac® as opposed to the science in testing of the product revealing that the formation of NDMA in the human body is the result of the chemical structure of ranitidine and its changes within the body and not any impurity.  Simply, the formation of Zantac® itself is defective in its design, and its structural molecular and chemical design and distribution makes it inherently dangerous, carcinogenic, and deadly to humans.

46.     Even after the revelations of September 2019, Sanofi refused for more than a month to withdraw its drug or halt its distribution.  It did so only in Canada where the government ordered that it do so.[29]

47.     For a month, Sanofi and BIP refused to act and refused to inform the public.  They also refused to modify their drug to make it safe or withdraw it.  These refusals

---

https://yle.fi/uutiset/osasto/news/pharmacies_pull_heartburn_meds_over_contamination_concerns/10977530; PB Jayakumar, *Anti-acidity drug ranitidine gives heartburn to industry and public,* Business Today (Sept. 24 2019), https://ww.businesstoday.in/sectors/pharma/anti-acidity-drug-ranitidine-gives-heartburn-to-industry-and-public/story/380916.html; *Singapore halts sales of some antacids over stomach cancer concerns,* South China Morning Post (Sept. 16, 2019), https://www.scmp.com/news/asia/southeast-asia/article/3027521/singapore-halts-sales-some-antacids-over-stomach-cancer; *Health ministry recall Zantac as a precautionary measure,* Qatar Tribune (Sept. 16, 2019), https://www.qatar-tribune.com/news-details/id/172460; Rava Rizvi, *DRAP Orders Recall of Medicine That Can Cause Cancer,* Prokpakistani (Sept. 24, 2019), https://propakistani.pk/2019/09/24/drap-orders-recall-of-medicine-that-can-cause-cancer/?utm_source=rss&utm_medium=rss&utm_campaign=drap-orders-recall-of-medicine-that-can-cause-cancer.; *UAE suspends medicine with ranitidine,* Expat Media (Sept. 24, 2019), https://www.expatmedia.net/uae-suspends-medicine-rantidine/2019/09/.

[27] Anna Edney, Carcinogens Scare Sets Off Global Race to Contain Tainted Zantac, Bloomberg (Sept. 18, 2019) and *Dr. Reddy tumbles on buzz halting all supply of Ranitidine*, Business Standards (September 23, 2019).

[28] FDA, *Statement alerting patients and healthcare professionals of NDMA found in samples of Ranitidine* (Sept. 13, 2019), https://www.fda.gov/news-events/press-announcements/statement-alerting-patients-and-health-care-professionals-NDMA-found-samples-ranitidine.

[29] Anna Edney, *Carcinogen scare sets off global race to contain tainted Zantac,* Los Angeles Times (Sept. 18, 2019), https://www.latimes.com/business/story/2019-09-18/carcinogen-scare-tainted-zantac.

occurred even though both Sanofi and BIP knew or had reason to know that unsafe and carcinogenic levels of NDMA were produced in the human body of Zantac®'s users. Numerous scientific studies disclosed this and were or should have been known to sophisticated research and pharmaceutical companies like the Defendants.[30]

48.     Zantac® was developed by GlaxoSmithKline and approved as a prescription by the FDA in 1983.[31]  Sales were the product of a significant and aggressive marketing strategy. In 1996 Zantac® became available without a prescription.[32]  Generic versions became available thereafter, but Plaintiff generally used the brand name Zantac® product.

### C.  NDMA Is Dangerous

49.     NDMA is dangerous.  It is an organic chemical that forms in both industrial and natural processes and it is a member of the N-Nitrosamine, a group of potent carcinogens.[33]  NDMA has long been known to be carcinogenic to humans and as long ago as 1979 it was known to have caused cancer in virtually every laboratory animal tested for

---

[30] See, e.g., Massimiliano Sgroi, et al., *N-Nitrosodimethylamine (NDMA) and its precursors in water and wastewater: A review of formation and removal*, 191 Chemosphere 685 (Oct. 15, 2017; Yong Dong Liu, et al., *Formation Mechanism of NDMA from Ranitidine, Trimethylamie, and Other Tertiary Amines during Chloramination: A Computational Study*, 48 Envtl. Sci. & Technology 8563 (June 26, 2014); Julien Le Roux, et al., *Chloramination of nitrogenous contaminants (pharmaceuticals and pesticides): NDMA and halogenated DBPs formation*, 45 Water Research 3164 (Mar. 26, 2011); Ruqiao Shen & Susan A. Andrews, *Demonstration of 20 pharmaceuticals and personal care products (PPCPs) as nitrosamine precursors during chloramine disinfection*, 45 Water Research 944 (Oct. 13, 2010); Giovanni Brambilla & Antonietta Martelli, *Update on genotoxicity and carcinogenicity testing of 472 marketed pharmaceuticals,* 681 Mutation Research 209 (Sept. 19, 2008; Giovanni Brambilla & Antonietta Martelli, *Genotoxic and carcinogenic risk to humans of drug-nitrite interaction products,* 635 Mutation Research 17 (Dec. 6, 2006); Zeng & Mitch, *supra* footnote 15.

[31] Write, *supra* footnote 3 at 26

[32] *Id.* At 28.

[33]*Technical Fact Sheet – N-Nitroso-dimethylamine (NDMA), Environmental Protection Agency* (Jan. 2014) https://www.epa.gov/sites/production/files/2014-03/documents/ffrrofactsheet_contaminant_ndma_january2014_final.pdf

a reaction to it.[34] A 1983 publication disclosed genotoxicity evidence of carcengenotoxicity in rats given ranitidine.[35]

50. NDMA has been demonstrated as a cause of gastric, esophageal, stomach, biliary, hepatic, pancreatic, liver, intestinal, bladder and prostate cancer.[36]

51. The Defendants knew or should have known of all the science that disclosed the risks and hazards of NDMA and the fact that Zantac® causes its formation in the body due to Zantac®'s chemical composition and the reaction of those chemicals within the body. As early as 1980, consumer products with unsafe levels of NDMA and other nitrosamines were recalled by manufacturers either voluntarily or as directed by the FDA.[37]

52. By 2004 the risk of bladder and related cancers caused by ranitidine was becoming well established in the scientific community.[38] Defendants also knew of the

---

[34] Jane Brody, *Bottoms Up: Alcohol in moderation can extend life,* The Globe and Mail (Canada) (Oct. 11, 1979); *see* Rudy Platiel, *Anger grows as officials unable to trace poison in reserve's water,* The Globe and Mail (Canada) (Jan. 6, 1990) (reporting that residents of Six Nations Indian Reserve "have been advised not to drink, cook or wash in the water because testing has found high levels of N-nitrosodimethylamine (NDMA), an industrial byproduct chemical that has been linked to cancer"); S.A. Kyrtopoulos, *DNA adducts in humans after exposure to methylating agents,* 405 Mutation Research 135 (1998) (noting that "chronic exposure of rats to very low doses of NDMA gives rise predominantly to liver tumors, including tumors of the liver cells (hepatocellular carcinomas), bile ducts, blood vessels and Kupffer cells").

[35] Brambilla et al., Genotoxic effects in rodents given high oral doses of ranitidine and sodium nitrite, 4 Carcinogenesis10, 1281-1285 (1983).

[36] G Tchernev et al, Valsartan/Hydrochilorothiazide Induced Prostate Carcinoma in a Patient Who Subsequently Developed Melanoma, Vol 33 Journal of Biological Regulators & Homeostatic Agents, no. 3 (2019) (at https://www.researchgate.net/profile/Georgi_Tchernev/publication/333185727_Valsartanhydrochlorothiazide_induc ed_prostate_carcinoma_in_a_patient_who_subsequently_developed_melanoma/links/5d04774e458515b055d2adf3/ Valsartan-hydrochlorothiazide-induced-prostate-carcinoma-in-a-patient-who-subsequently-developed-melanoma.pdf ; Teng Zeng, oral intake of ranitidine increases urinary excretion of N-nitrosodimethylamine, 37 Carcinogenesis, Issue 6 pp 625-634 (June 2016); Juliia Golovynska et al, Peripheral N-methyl-D-aspartate receptor localication and role in gastric acid secretion regulation; immunofluorescence and pharmacological studies, Scientific Reports Vol 8, Art No. 7445 (2018); La Vecchia et al, Nitrosamine intake and gastric cancer risk, 4 Europ. J. Cancer. Prev. 469– 474 (1995); Pobel et al, Nitrosamine, nitrate and nitrite in relation to gastric cancer: a case-control study in Marseille, France, 11 Europ. J. Epidemiol. 67–73 (1995).

[37] See, e.g., Karen DeWitt, *Carcinogen Fear Allayed*, The New York Times (July 2, 1980) (reporting recall of beer with higher levels of nitrosamines than permitted)

[38] Michaud et al, Peptic ulcer disease and the risk of bladder cancer in a prospective study of male health professionals, 13 Cancer Epidemiol Biomarkers Prev. 2, 250-254 (2004).

15

World Health Organization's publications in 2008 concerning NDMA and drinking water.[39]

53.     Despite awareness of these publications, research findings, and undisputed science, the Defendants continued to market and promote Zantac® and ranitidine products as safe.  It was not.  Instead, it was defective in its design and the molecular structure of ranitidine, which contains both a nitrite and dimethylamine, which are well known to combine to form NDMA.[40]

54.     Ranitidine, therefore, produced NDMA by reacting with itself and within itself in the human body.  This means that every dosage and form of ranitidine including Zantac® exposes users to elevated dangerous levels of the carcinogen NDMA.[41]

### D.  Failures of Defendants to Disclose

55.     Despite knowledge of these circumstances, Defendants did not disclose that Zantac® exposes users to elevated levels of NDMA or that it was carcinogenic.  Even after a 2016 publication in the scientific journal *Carcinogenesis* which confirmed the production of NDMA under stomach-relevant PH conditions in living persons and that during a twenty-four (24) hour period following intake of ranitidine the quantity of NDMA in urine excreted by the patient increased by 400 times from 110 to 47,600 ng."[42]

56.     Even after the *Carcinogenesis* publication, Defendants did not warn the public to withdraw their Zantac® products, or in any other way disclose the risks of its continued use.

57.     The FDA did not act to protect the public.  This is largely because the FDA is a regulatory agency that relies on drug manufacturers or others who submit Citizens Petitions, to deliver to it new information about approved products like Zantac®.  The FDA

---

[39] *Technical Fact Sheet supra* footnote 22; WHO NDMA Guidelines for Drinking-Water Quality (3rd Ed., 2008), available at https://www.who.int/water_sanitation_health/dwq/chemicals/ndmasummary_2ndadd.pdf.

[40] Citizen Petition *supra* footnote 11 at 19.

[41] *Id*. at 1–2.

[42] Zeng & Mitch, *supra* footnote 15 at 625.

does not normally conduct its own ongoing testing, but after a product is approved, requires some act to trigger its attention. The Defendants, as manufacturers of Zantac® an approved drug, are required to submit annual reports to the FDA containing information regarding the drug's safety and disclosing newly discovered risks, including those in published scientific studies.[43]

58.     No disclosures were made by the Defendants. This annual report is required to include copies of unpublished reports, summaries of published reports of new toxicological findings of relevant types, and other significant publications obtained by the manufacturer concerning the ingredients in the drug.[44]

59.     Defendants utterly failed to discharge this duty. Plaintiff continued to rely on representations that Zantac® was safe. These representations caused him to ingest massive quantities of ranitidine to his damage.

### First Theory: Strict Liability (Failure to Warn)

60.     All allegations above are renewed here.

61.     Each Plaintiff contends each Defendant had a duty to exercise reasonable care to avoid physical harm to Plaintiff by preventing the recognizable and foreseeable harm it would cause by marketing its Zantac® products, and by doing so without disclosing the known carcinogenic properties of the products and their debilitating disease-inducing and life threatening consequences for foreseeable human users. Plaintiff is one of these users. Plaintiff contends that the Defendants sold Zantac® products in a defective condition, unreasonably dangerous to consumers, including them. Defendants engaged in the business of selling the Zantac® products which they knew and expected would reach Plaintiff without substantial changes in the condition from that in which it was sold and did so reach Plaintiff. He did not misuse the product. Plaintiffs' damages are not subject to the economic loss rule.[45]

---

[43] 21 CFR § 314.81(b)(2)

[44] 21 CFR § 314.81(b)(2)(v)

[45] See *Lesiak v. Central Valley Ag.,* 283 Neb 103, 808 NW2d 67 (2012).

62.    Each Defendant is strictly liable in tort to Plaintiffs for failure to warn of the dangers of Zantac® products. At all relevant times the Defendants each knew and each failed to act upon, report to the FDA, or disclose to the public, the known property of Zantac® to development into NDMA within the human body and thereby produced, at levels far in excess of permissible dosages, dangerous, carcinogenic NDMA known to cause cancers of the stomach, liver, kidneys, bladder, pancreas, esophagus, prostate and other abdominal organs, as well as other cancers, within human users and nonhuman test subjects. As the parties who tested, developed, designed, manufactured, marketed, sold, distributed and promoted Zantac® products which were defective and unreasonably dangerous and which had been so proven in tests known to Defendants but not known to the general public, Defendants had, but breached their duty to provide adequate warnings or instructions concerning the dangerous characteristics and risks of Zantac®.[46] They did not do so.

63.    Each Defendant is charged with responsibility for having research developed, designed, tested manufactured, inspected, labeled distributed, marketed, promoted, sold, and otherwise released Zantac® into the stream of commerce. While doing so, they presented Zantac® as an approved substance that was beneficial, not harmful, to users. They disclosed no risk of:

63.1.  Development of NDMA.

63.2.  The risks of NDMA.

63.3.  Development of cancer in human users.

63.4.  The propensity to develop a substance within the human body that is carcinogenic and causes cancer.

63.5.  The adverse consequences on health for the use of NDMA producing Zantac® including cancers requiring intensive medical intervention,

---

[46] *Stahlecker v. Ford Motor Co.*, 266 Neb 601, 667 NW2d 244 (2003) Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010), and Restatement (Second) of Torts § 402A. Also, *Jay v. Moog Automotive, Inc.*, 264 Neb 875, 652 NW2d 872 (2002)(defective design).

and posing risks of debilitation, loss of critical organs, permeant impairments, and death.

64.     The duty to warn by each Defendant was ongoing. Defendant BIP had this duty before the Sanofi Defendants, but the Sanofi Defendants as successors with joint and several successor liability and are parties with a duties and responsibilities to engage in, perform and complete independent investigations and make independent warnings, and disclosures to the public, as well to regulatory officials.  At the time manufacture by each Defendant, that Defendant could have provided the warnings or instructions regarding the risks of Zantac® but did not do so.  Despite being warned by extensive publicly accessible scientific literature, the Defendants knew or should have known as pharmaceutical companies that Zantac® creates NDMA and NDMA produces cancer in the human body. Defendants withheld this information, or they failed to investigate, study, test or promote the safety or minimize the dangers, to Zantac®  consumers who would foreseeably be harmed by Zantac®. These consumers included Plaintiff, Mr. Luedtke.

65.     The Defendants joint and several failures to discharge their duties to disclose adequate warnings to consumers proximately caused Plaintiff's cancer which resulted from carcinogenic NDMA in his body.  Plaintiff has no other predisposing factors and Zantac® was a substantial contributing cause to the development of cancer to Plaintiff's body.

66.      Neither, Plaintiff could have discovered the defects or risks associated with Zantac®. Instead, Plaintiffs relied upon the skills, superior, knowledge and judgment of the Defendants to know about and disclose serious health risks associated with their products.  They learned of this risk only when Zantac® was withdrawn from the market.

67.     Zantac®'s label does not make adequate, suitable, or required disclosures. It did not so throughout the course of its marketing from and after 2006 through March 20, 2020 when Zantac® was withdrawn from the market.

68.     The failure to warn committed by the Defendants on Zantac® labeling included:

68.1.   Noncompliance with federal law;

68.2.   Noncompliance with state law;

19

1094935

68.3.   Failure to disclose known risk associated with Zantac® ;

68.4.   False statements about Zantac®'s safety;

68.5.   Concealment of Zantac®'s dangers and risks of harm.

69.     As a direct, proximate result both Plaintiffs   suffered great mental anguish and Plaintiff sustained personal injuries, including illness, disease, need for extensive medical treatment intervention and care, special damages including loss income, loss earning capacity, medical costs and costs incidental thereto, and other special damages. He also suffered from depression, stress and mental anguish over his potential loss of life and livelihood, concern about his ability to support himself and his family going forward, and near certain loss of life expectancy.

## Second Theory: Strict Liability in Tort

70.     All allegations above are renewed here.

71.     Defendants are strictly liable in tort to Plaintiffs for defective design of their Zantac® products.

72.     At relevant times, the Defendants engaged in the research testing, development, designing, manufacturing, marketing, selling, distributing, promoting, registering, labeling, and reporting matters related to Zantac® products and the products themselves.  These Zantac® products included the ones used by Plaintiff.  As alleged above the products were inherently and unreasonably dangerous.  They contained substances that were foreseeable known to produce extremely high levels of NDMA in the human body. NDMA is a known dangerous carcinogen. It produced, and Defendants knew it produced, renal, biliary, hepatic, intestinal, prostate, stomach, pancreatic, liver, and other cancers in the bodies of human users as reported and in scientific and medical literature, and in laboratory animals as reported in scientific testing literature, all of which were ignored and denied by Defendants.

73.     Rather than make appropriate reports and disclosures to the public, Defendants suppressed and concealed this information and diminished its availability. For example Defendants knew or should have known that a 2016 study at Stanford University

gave 10 healthy volunteers 150 milligrams of Zantac® and found that subsequent NDMA levels in their urine exceeded 47,000 nanograms.[47]

74.    Zantac® products were unreasonably dangerous when they were placed by each Defendant into the stream of commerce.  Each Defendant during the times relevant as described above ultimately controlled and supervised these actions and each Defendant did design, research, development and manufacture produce assemble, label, advertise, promote and market  and sell and distribute  Zantac®  products used by Plaintiff. Defendant BIP described Zantac® as safe and Sanofi perpetuated this description without making any corrections.  Yet, Zantac® was known to be associated with elevated levels of cancer.

75.    The Zantac® products to which Plaintiff was exposed in which he injected and were designed made and produced by Defendants, were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate. The risks and dangers of Zantac® exceeded the benefits allegedly associated with it. Exposure to Zantac® presents a risk of harmful side effects that outweighs any potential utility stemming from its use. Zantac® reached Plaintiffs with the defects in it when placed in the stream of commerce.  Plaintiff used it as recommended and intended without changes.

76.    Defendants knew or had to reason to know that its Zantac®'s produces were defective and inherently and dangerous and unsafe when used in the manner instructed and provided by them and represented on their label, all of which existed when they placed Zantac®  in the stream of commerce. The products were:

76.1.   Defective in design in formulation and consequently dangerous to an extent beyond which an ordinary consumer would contemplate.

76.2.   Unreasonably dangerous in that they were hazardous and posed grave risks of cancer of multiple types to foreseeable users, using the products as anticipated.

76.3.   They failed to test, investigate or study the hazards of Zantac® and its propensity to produce NDMA in the human body and to appreciate

[47]  See Fn 15.

21

1094935

that NDMA would cause cancers in foreseeable users including Plaintiff.

76.4.  They failed to conduct post market surveillance of Zantac® in reasonable manner and to identify risks and adjust or withdraw it from the market but instead continued to sell it.

77.  At all relevant times Plaintiff used Zantac® as intended and in the appropriate foreseeable manner as consumer. Zantac® reached Plaintiff in the same condition in which left the control of each Defendant and was reasonably and responsibility used by Plaintiff.

78.  Zantac® is more dangerous than alternative products that do not produce dangerous levels of NDMA in the body. Defendants knew this and knew that less risky alternatives to use as antacids were available. They also knew that using the alternatives would have prevented the harm and cancer from which Plaintiff suffers.

79.  Zantac® was at all relevant times defective in design and/or formulation due to its inherent risk of producing the carcinogen NDMA and thereby rendering the drug unreasonably dangerous.  Zantac® is defective because the substances of which it is compounded include inherently unstable ranitidine in molecular form containing both nitrate and dimethylamine in groups that combine to form NDMA as alleged.[48]

80.  Each Defendant had a duty to use due care in designing and manufacturing Zantac® and to disclose known defects.  Further, each Defendant had a duty to withhold from the market inherently dangerous products, whether the dangers were disclosed or not.[49]

81.  The design defect in Zantac® existed in the drug each time each shipment left each Defendant who shipped it during the period of that Defendant's ownership and control and at the time during which Plaintiff was purchasing and using Zantac®.  Zantac®

---

[48]  Nebraska recognizes that FDA approval does not entitle a pharmaceutical company to blanket immunity from strict liability in tort. *Freeman v. Hoffman La-Roche, Inc.,* 260 Neb 552, 555-569, 618 NW2d 827, 835-841 (2000).

[49]  Nebraska recognizes a common law duty to use due care so as to not negligently injure another person. *Wilke v. Woodhouse Ford, Inc.,* 278 Neb 800, 810, 774 NW2d 370, 379 (2009).

22

was expected to, and did reach, Plaintiff without a substantial change from the condition in which Zantac® was sold.  It was used for its foreseeable intended purpose, in the way Defendants each recommended that it be used and for the purposes recommended.

82.    Plaintiffs each sustained the damages for which they sue was a direct proximate result of the condition in which Zantac® was marketed and sold. Each Defendant is strictly liable in tort to Plaintiff because of the defective condition in which Zantac® was placed in the stream of commerce.

83.    Defendants acted willfully and wantonly, fraudulently, maliciously. They conducted themselves with abruptness disregard for the health and safety users of Zantac® including Plaintiffs.  Defendants risked the lives of consumers and users of Zantac® for profits and concealed its dangers with a profit motive to do so.

84.    Plaintiffs' damages may continue to accrue  Leave is requested to amend the Complaint to state the total amount of special damages at the time of the final pretrial conference or at trial.

### Third Theory:  Negligence

85.    All allegations above are renewed here.

86.    Each Defendant owed a duty of reasonable care to all foreseeable users of their Zantac® products, including Plaintiffs, but each breached the duty of reasonable care. The breaches proximately caused Plaintiffs' damages.[50]

87.    Zantac® was available for over the counter purchase in 75 mg and 150 mg pills and by prescription for 300 mg pills. It was sold in at least these forms:

> Zantac®
>
> Zantac® 150
>
> Zantac® 150 Acid Reducer
>
> Zantac® 150 Maximum Strength
>
> Zantac® Maximum Strength Cool Mint
>
> Zantac® 75

---

[50] *Deviney v. UPRR,* 280 Neb 450, 786 NW2d 902 (2010).

Zantac® 75 Regular Strength

Zantac® Maximum Strength 150 Cool Mint

Zantac® (Ranitidine Injection)

Zantac® (Ranitidine Syrup)

Zantac® (Ranitidine Tablets & Capsules)

Zantac® Cool Mint

Zantac® Injection

88.     Each Defendant caused Zantac® products to be sold, distributed, packaged, labeled, marketed and promoted to Plaintiffs and other foreseeable users.  By undertaking these activities, each Defendant owed to Plaintiffs and the public the duties:

88.1.  To exercise reasonable care in the design, research manufacture marketing advertising supply for motion packaging sale and distribution, labeling, and description of its submissions to regulators of their Zantac® products.  This included the duty to undertake all steps reasonable and necessary to assure that these Zantac® products were not unreasonably dangerous to consumers.

88.2.  To exercise reasonable care in the marketing advertisement labeling and sale of Zantac® products including a duty to warn the consumers and general public of the risks and hazards associated with Zantac®, its action within the human body, its production of NDMA, the carcinogenic properties of NDMA and the contraindications, adverse effects, and life threatening damages that were likely to result from its use because of Zantac® carcinogenic properties.

88.3.  To warn of know risks and risks disclosed by scientific research.

88.4.  To withhold the product from the market.

88.5.  To exercise reasonable care and marketing and representation of the product.

88.6.  To refrain from falsifying, withholding, or manipulating unfavorable research data or fining favorable research data or results.

24

88.7. To label its product with complete disclosures of the risks.

89. Each Defendant breached each of these duties and was negligent by failing to fulfill each of them. Instead, each Defendant negligently:

89.1. Designed, formulated, labeled, marketed, promoted and sold its Zantac® products.

89.2. Submitted, or withheld and failed to submit, relevant research information concerning the hazards and risks of Zantac® to government regulatory authorities.

89.3. Failed to recall its Zantac® products.

89.4. Manufactured Zantac®.

89.5. Designed and tested Zantac®.

89.6. Packaged Zantac®.

89.7. Marketed, advertised, and commercialized Zantac®.

89.8. Failed to provide adequate instructions, guidelines or safety precautions to foreseeable users

89.9. Failed to inform of safer alternatives known to exist.

90. These negligent acts and omissions occurred and were committed by each Defendant. Defendants did so when they each knew of the risks associated with Zantac® including the development NDMA, carcinogenetic consequences on the human body, and the development of lethal cancers including renal cancer.

91. Each Defendants conduct was negligent, but each also acted recklessly. Each made conscious decisions to withhold action and to decline to withdraw, recall, relabel, warn, inform regulators, or otherwise take appropriate steps to protect the public and foreseeable users including Plaintiff.

92. As a proximate result of these acts and omissions, Plaintiffs sustained the damages for which they sue.

**Fourth Theory: Breach of Express Warranty**

93. All allegations above are renewed here.

94.    Defendants' public statements descriptions and promises relating to Zantac® constituted express warranties that Zantac® was safe and effective for its intended use and was designed and sold to prevent or relieve heartburn associated with acid indigestion and a sour stomach, or as a reaction to certain ingested foods or beverages.

95.    Each Defendants expressed warranties were made in the form of:

95.1.    Public written and verbal assurances that Zantac® was safe.

95.2.    Press releases and media statements describing Zantac® and its safety.

95.3.    Verbal assurances made by Defendants' marketing personnel about the safety of Zantac® including statements made to pharmacists, physicians, and other health care providers for the purpose of having those statements repeated without investigations.

95.4.    On the Zantac® box, and label and packaging materials.

96.    In each and all these materials, Zantac® was promoted as the best treatment available as an antacid and as a safe H2 blocker. Specific statements by Defendants about Zantac® included the statement that:

96.1.    It relieved heartburn associated with acid indigestion and sour stomach and heartburn associated with eating certain foods:

96.2.    Should not be used if one had suffered an allergic reaction to ranitidine or other acid reducers or had kidney disease except under a physician's advice, or if a person considering its use was pregnant or breast feeding, in which case it should be used only after asking a health professional.

96.3.    Active ingredients included Hypromellose, magnesium stearate, microcrystalline cellulose, synthetic red iron oxide, titanium dioxide, triacetin.

These descriptions of the product were made by both BIP and by the Sanofi Defendants.[51]

---

[51] It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the

26

97.     The package inserts for Zantac® described its clinical pharmacology without any description of the development of NDMA or risks of carcinogen.  Indeed, the package insert affirmatively represented that:

      97.1.   Zantac® "does not affect pepsin secretion and has no significant effect on pentagastrin-stimulated intrinsic factor secretion and little or no effect on fasting or postprandial serum gastrin".

      97.2.   Zantac® should be adjusted in patients with impaired renal function and caution should be observed in patients with hepatic dysfunction but there was no indication that it should not be used in such patients.

      97.3.   The package inserts further affirmatively represented "there was no indication of tumorigenic or carcinogenic affects in life-span studies in mice and rats at oral dosages up to 2,000 mg/kg/day".

98.     While adverse reactions were described, none of the adverse reactions included the development of cancers even though laboratory and human studies had provided abundant contrary data.  These statements were made about Zantac® by Defendant GlaxoSmithKline as late as April 2009, and thereafter within the period of the statute of repose.  The foregoing statements were affirmations of fact and descriptions of the product.[52]  Plaintiffs reasonably relied on Defendants' affirmations of fact and descriptions though they were not accurate.  Instead, Zantac® produces lethal carcinogenic and dangerous levels of NDMA in the human body which in turn produces life threatening, and fatal cancers.

99.     Each Defendant breached the foregoing express warranties because in each instance the warranties were incomplete, not placed in proper context in the light of the things that were said about the product and were false.[53]

---

goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty. § 2–313(2). *Hillcrest Country Club v. N.D. Judds Co.,* 236 Neb 233, 461 NW2d 55 (1990).

[52] Neb UCC § 2-313(a) and (b).

[53] Whether or not an express warranty arises under the UCC and whether express or implied warranties are breached are questions of fact to be determined by the trier of fact. See *Hillcrest Country Club v. N.D. Judds Co.,* 236 Neb

27

100. Plaintiffs justifiably relied on the express warranties and representations of each Defendant as they purchased the product and Plaintiff used it over the years. When decision purchases were made, reliance was placed upon the expressed warranties of the Defendants. The Defendants were merchants with respect to products like and including Zantac® , and Plaintiffs were members of the consuming public who had to and did rely upon them for their knowledge, experience and expertise in formulated pharmacological drugs like and including Zantac® .[54]

101. The harm caused by Zantac® far outweigh its benefits rendering it more dangerous than an ordinary consumer or user, including Plaintiffs, would expect, and more dangerous than available alternative products.

102. As a direct proximate result of the acts and omissions of the Defendants, Plaintiffs sustained the damages for which they sue.

### Fifth Theory: Breach of Implied Warranties

103. All allegations above are renewed here.

104. Each Defendant placed Zantac® on the market and in the stream of commerce with the implied warranty that Zantac® was merchantable and was also fit for its intended purpose as a medication that would prevent or reduce antacid, and the adverse consequences of stomach acids and sour stomach. Furthermore, Plaintiffs relied upon the implied warranties that Zantac® was fit to pass in the over-the-counter pharmaceutical trade without objection as to its quality and perform as represented.

105. Defendants' implied warranties were breached. The product, Zantac® , was not of merchantable quality and not safe and fit for the use for which it was intended. It was not fit for use as an antacid because it is carcinogenic and causes to be introduced lethal cancer-producing levels of NDMA in the system.

---

233, 461 NW2d 55 (1990) (creation of express warranty); *Ruskamp v. Hog Builders, Inc.,* 192 Neb 168, 219 NW2d 750 (1974) (whether there has been breach of warranty, express or implied, is largely question of fact).

[54] *Id.*; Neb UCC § 2-318.

106.    The harm caused by Zantac®  far outweigh its benefits rendering it more dangerous than an ordinary consumer or user, including Plaintiffs, would expect, and more dangerous than available alternative products.[55]

107.    As a direct, proximate result of these breaches of warranty, Plaintiffs sustained the damages for which they sue.

### Sixth Theory:  Nebraska
### *Deceptive Trade Practices Act, Neb Rev Stat §§ 87 – 301 et. seq.*

108.    Allegations above are renewed here.

109.    Zantac®  is an article within the meaning of *Neb Rev Stat § 87-301(3)* and it contains products that act as carcinogens in the human body. Zantac®  was represented as safe. It did so with television "Fireman" commercials, and with other advertisements.[56]

110.    Each Defendant engaged in deceptive trade practices when in the course of its business it:

    110.1. Represented that Zantac®  had approval characteristics, ingredients, uses, benefits or qualities that it did not have.

    110.2. By implication that it was not carcinogenic though it was.

    110.3. Zantac®  was of superior quality and safe for use as an antacid or an acid reducer and for other purposes expressed on its label and package inserts when it was not because it was carcinogenic.

    110.4. Made false statements concerning its safety and concealed it carcinogenic properties.

111.    Defendant's acts and omissions constitute deceptive trade practices within the meaning of the Nebraska *Deceptive Trade Practices Act.*

---

[55] Proof of negligence establishes breach of implied warranty. *Adams v. American Cyanamid Co.*, 1 Neb App 337, 498 NW2d 577 (1992). *El Fredo Pizza, Inc. v. Roto-Flex Oven Co,* 199 Neb 697, 261 NW2d 358 (1978); *Christensen v. Eastern Nebraska Equip Co.,* 199 Neb 741, 261 NW2d 367 (1978).

[56] "Fireman" video of September 2015  available at https://www.google.com/search?biw=1280&bih=557&tbm=vid&ei=OIKkXuXcKMXWtQbswbCAAQ&q=zantac+commercial+tv+2015&oq=zantac+commercial+tv+2015&gs_l=psy-ab.12...14961.23044.0.25020.5.5.0.0.0.0.180.732.0j5.5.0....0...1c.1.64.psy-ab..0.1.180...33i299k1j33i160k1.0.GNXJPv1_srI    - last visited 4.25.2020, and at https://www.ispot.tv/ad/AkgC/zantac-firefighter  - last visited 4.25.2020.

112.    Each Plaintiff is a person damaged by the deceptive trade practices of the Defendants and entitled to relief in the form of monetary damages as his purchased and used Zantac®  and was diagnosed with cancer caused by it within four (4) years of this action.  During those four (4) years, Zantac®  was sold by the Sanofi Defendants and Defendant BIP, and they engaged in the deceptive practices at issue during this time.[57]

### Seventh Theory:  Nebraska *Consumer Protection Act*

113.    All allegations above are renewed here.

114.    At all relevant times Defendants were persons within the meaning of the Nebraska *Consumer Protection Act*.[58]   Defendants were engaged in trade or commerce by selling Zantac®  in Nebraska to members of the public.[59]

115.    Defendants engaged in unfair methods of competition and unfair and deceptive practices in the sale of Zantac®  because they concealed the fact that it was a carcinogen and did not sell it truthfully.  Their conduct violated the *Act*.[60]

116.    Plaintiffs were injured in their persons, but also injured in their business or property by reason of the wrongful action of the Defendants.  Accordingly, they are entitled to maintain an action for civil damages pursuant to *Neb Rev Stat* § 59-1609 and in doing so are entitled to recover the actual damages sustained, the costs of suit, and reasonable attorney's fees, together with a penalty not to exceed $1,000 per wrongful act of each Defendant.[61]

### First Claim:  Mr. Luedke

117.    All allegations above are renewed here.

118.    Plaintiff invokes all theories described above.

119.    As a direct proximate result of each and all wrongful acts of each Defendant, Plaintiff sustained the general and special damages described above.  He contracted cancer

---

[57] *Neb Rev Stat* § 87-303.10.
[58] *Neb Rev Stat* § 59-1601(1).
[59] *Id* at 59-1601(2).
[60] *Neb Rev Stat* § 59-1602.
[61] *Neb Rev Stat* § 59-1609.

1094935

and is both temporarily and permanently impaired and suffers physical and emotional pain and anguish which will be ongoing and lifelong.

120.    Plaintiff seeks general and special damages from each and all Defendants jointly and severally.  His general damages include  temporary and permanent loss of stamina, strength, ability to perform  his work  and activities of daily living, debilitation of his health and quality,  lost earnings and lost earning capacity,  limiting and disabling healthcare interventions for his cancer, enhanced of vulnerability to viruses and diseases including the novel Corona virus known as Covid-19, emotional distress, anxiety, depression, fear of uncertainty, and probable loss of life expectancy. His special damages include lost earnings and lost future earnings, medical care costs and expenses, costs for medications and treatments, travel and related expenses for medical care, and the need for legal expenses. His special damages are accruing. Leave to amend this Complaint to state the special damages as of the time of the final pretrial conference, or at trial, is requested.

### Second Claim:  Mrs. Andersen

121.    All allegations above are renewed here.

122.    As a direct proximate result of the foregoing acts and omissions, Juliet Andersen, spouse of Gary Luedtke, sustained general damages because of the loss of her husband's care, comfort, companion, society, support, services, advice, counsel, love and affection and caregiver's injuries.  These are consortium[62] damages which she suffers as a derivative result of her husband's injuries.  Mrs. Andersen seeks general damages.

### Requests for Relief

On the foregoing basis, Plaintiffs seek:

123.    For Mr. Luedtke, general and special damages on Plaintiff's first claim.

124.    For Ms. Andersen  judgment on their second claim for general damages.

---

[62]  "We have defined consortium to mean comfort, society, love, and protection. *[Citations omitted.]* We have long held that a husband may recover for the loss of his nonfatally injured wife's consortium, *Omaha & R. V. R. Co. v. Chollette,* 41 Neb 578, 59 NW 921 (1894), and permit a wife to recover for the loss of her nonfatally injured husband's consortium, *Anson v. Fletcher,* 192 Neb 317, 220 NW2d 371 (1974)." *Guenther by Guenther v. Stollberg*, 242 Neb 415, 416, 495 NW2d 286, 286 (993).

125.    For both Plaintiffs on each claim, taxable costs, prejudgment interest as allowed by law and attorneys' fees.

126.    Plaintiffs request leave to amend this Complaint to detail their special damages at the time of the final pretrial conference.  They also request leave to amend this Complaint in the event a motion to dismiss is sustained due to a defect in the pleading.

## Jury Demand

127.    Plaintiffs respectfully demand trial by jury.  If this case is not tried in the state court system in Nebraska Plaintiffs demand trial in Lincoln, Nebraska nearby where Plaintiffs reside, and the location most convenience for medical providers most and witnesses. In the federal system this case would be related to MDL 2924.

September 4, 2020.

Gary Luedtke and Juliet Andersen,
Plaintiffs

By: /s/ David A. Domina
David A. Domina, #11043
Domina Law Group pc llo
2425 S. 144th Street
Omaha, NE 68144
(402) 493-4100

*Plaintiffs' Lawyers*

32

# EXHIBIT 2

Official Nebraska Government Website

# Nebraska Judicial Branch

## Case Summary

In the District Court of LANCASTER County
The Case ID is  CI 20 0003227
           Gary Luedtke v. Sanofi-Aventis US LLC
The Honorable Lori A Maret, presiding.
Classification: Negligence-Other
Filed on 09/04/2020
This case is Open as of 09/04/2020

## Parties/Attorneys to the Case

|                  | Party                      |          | Attorney |
|------------------|----------------------------|----------|----------|

          Party                                    Attorney
Plaintiff ACTIVE
    Gary Luedtke

                                                   David A Domina
                                                   2425 S 144th St
    Lincoln            NE                          Omaha              NE 68144
                                                   402-493-4100

Plaintiff ACTIVE
    Juliet Andersen

                                                   David A Domina
                                                   2425 S 144th St
    Lincoln            NE                          Omaha              NE 68144
                                                   402-493-4100

Defendant ACTIVE
    Sanofi-Aventis US LLC
    55 Corporate Dr
    Bridgewater        NJ 08807
Defendant ACTIVE
    Sanofi US Services Inc
    55 Corporate Drive
    Bridgewater        NJ 08807
Defendant ACTIVE
    Chattem Inc
    1715 West 38th Street
    Chattanooga        TN 37409
Defendant ACTIVE
    Boehringer Ingelheim Pharma., Inc.
    900 Ridgebury Rd
    Ridgefield         CT 06877
Defendant ACTIVE
    Pfizer Inc
    5601 South 59th Street
    Lincoln            NE 68516
Defendant ACTIVE
    Walgreen's Co
    233 Southe 13th St, Ste 1900
    Lincoln            NE 68508
Defendant ACTIVE
    Walgreen's Boots Alliance Inc
    233 South 13th St, Ste 1900
    Lincoln            NE 68508
Defendant ACTIVE
    Walmart Inc
    5601 South 59th St, Ste C
    Lincoln            NE 68516

## Court Costs Information

| Incurred By | Account             | Date       | Amount  |
|-------------|---------------------|------------|---------|
| Plaintiff   | Petition            | 09/04/2020 | $35.00  |
| Plaintiff   | Filing Fee - State  | 09/04/2020 | $1.00   |

| Incurred By | Account | Date | Amount |
|---|---|---|---|
| Plaintiff | Automation Fee | 09/04/2020 | $8.00 |
| Plaintiff | NSC Education Fee | 09/04/2020 | $1.00 |
| Plaintiff | Dispute Resolution Fee | 09/04/2020 | $0.75 |
| Plaintiff | Indigent Defense Fee | 09/04/2020 | $3.00 |
| Plaintiff | Uniform Data Analysis Fee | 09/04/2020 | $1.00 |
| Plaintiff | J.R.F. | 09/04/2020 | $6.00 |
| Plaintiff | Filing Fee-JRF | 09/04/2020 | $6.00 |
| Plaintiff | Legal Aid/Services Fund | 09/04/2020 | $6.25 |
| Plaintiff | Complete Record | 09/04/2020 | $15.00 |
| Plaintiff | Service Fees | 09/10/2020 | $8.00 |
| Plaintiff | Service Fees | 09/10/2020 | $8.00 |
| Plaintiff | Service Fees | 09/10/2020 | $8.00 |
| Plaintiff | Service Fees | 09/10/2020 | $8.00 |

## Financial Activity

No trust money is held by the court
No fee money is held by the court

## Payments Made to the Court

| Receipt | Type | Date | For | Amount |
|---|---|---|---|---|
| 720132 | Electronic Trans | 09/04/2020 | Luedtke,Gary, | $83.00 |
| | | | Petition | $35.00 |
| | | | Filing Fee - State | $1.00 |
| | | | Automation Fee | $8.00 |
| | | | NSC Education Fee | $1.00 |
| | | | Dispute Resolution Fee | $.75 |
| | | | Indigent Defense Fee | $3.00 |
| | | | Uniform Data Analysis | $1.00 |
| | | | J.R.F. | $6.00 |
| | | | Filing Fee-JRF | $6.00 |
| | | | Legal Aid/Services Fun | $6.25 |
| | | | Complete Record | $15.00 |

## Register of Actions

09/10/2020 Return Summons/Alias Summons
           The document number is 00603416
                                                    (cj)
           Served 09/08/2020, Certified Mail
           Image ID   N20254C0ED02



09/10/2020 Return Summons/Alias Summons
           The document number is 00603415
                                                    (cj)
           Served 09/08/2020, Certified Mail
           Image ID   N20254C0WD02


09/10/2020 Return Summons/Alias Summons
           The document number is 00603414
                                                    (cj)
           Served 09/08/2020, Certified Mail
           Image ID   N20254C1KD02


09/10/2020 Return Summons/Alias Summons
           The document number is 00603413
                                                    (cj)


           Served 09/08/2020, Certified Mail
           Image ID   N20254C0QD02


09/08/2020 Summons Issued on Walmart Inc
           The document number is 00603416
     E-MAILED: ddomina@dominalaw.com
           Image ID   D00603416D02


09/08/2020 Summons Issued on Walgreen's Boots Alliance Inc
           The document number is 00603415
     E-MAILED: ddomina@dominalaw.com
           Image ID   D00603415D02


09/08/2020 Summons Issued on Walgreen's Co
           The document number is 00603414
     E-MAILED: ddomina@dominalaw.com


           Image ID   D00603414D02


09/08/2020 Summons Issued on Pfizer Inc
           The document number is 00603413
     E-MAILED: ddomina@dominalaw.com
           Image ID   D00603413D02


09/08/2020 Summons Issued on Boehringer Ingelheim Pharma., Inc.
           The document number is 00603412
     E-MAILED: ddomina@dominalaw.com
           Image ID   D00603412D02


09/08/2020 Summons Issued on Boehringer Ingelheim Pharma., Inc.
           The document number is 00603411
     E-MAILED: ddomina@dominalaw.com
           Image ID   D00603411D02



09/08/2020 Summons Issued on Chattem Inc
           The document number is 00603410
     E-MAILED: ddomina@dominalaw.com
           Image ID   D00603410D02


09/08/2020 Summons Issued on Sanofi US Services Inc

The document number is 00603406
    E-MAILED: ddomina@dominalaw.com
            Image ID   D00603406D02


09/08/2020 Summons Issued on Sanofi-Aventis US LLC
            The document number is 00603405
    E-MAILED: ddomina@dominalaw.com
            Image ID   D00603405D02



09/08/2020 Summons Issued on Sanofi-Aventis US LLC
            The document number is 00603404
    E-MAILED: ddomina@dominalaw.com
            Image ID   D00603404D02


09/04/2020 Praecipe-Summons/Alias
            This action initiated by party Gary Luedtke
            Image ID   N20248K4ID02


09/04/2020 Complaint-Praecipe
            This action initiated by party Gary Luedtke
            Image ID   N20248K4ED02

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200003227
Transaction ID: 0009337248
Filing Date: 09/10/2020 01:12:26 PM CDT

## SERVICE RETURN

603413

```
LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln          NE 68508
```

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____ . I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                      _____

Mileage ____miles         _____

  TOTAL              $ _____

Date: _____   BY: _____
                                          (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____Pfizer, Inc_____

At the following address: _____5601 South 59th Street, Suite C_____
                          Lincoln, NE 68516

_____

_____

on the ___4th__ day of ___September_____   2020__ , as required by Nebraska state law.

                          _____/s/ David A. Domina_____

Postage $ __8.00____   Attorney for: _____Plaintiff_____

The return receipt for mailing to the party was signed on ___September 8, 2020___ .

To: Pfizer Inc                    From: David A Domina
    5601 South 59th Street              2425 S 144th St
                                        Omaha, NE 68144
    Lincoln, NE 68516

## ATTACH RETURN RECEIPT & RETURN TO COURT

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Pfizer, Inc.
CT Corporation System
5601 South 59th Street, Suite C
Lincoln, NE 68516

9590 9402 5832 0034 0567 01

2. Article Number (Transfer from service label)

7019 2970 0000 3655 9542

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X  Josh Holbrook   ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

Josh Holbrook

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

SEP 8 2020

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
3.55

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $    2.85
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery  $

Postage
$ 1.60

Total Postage and
$ 8.00

Sent To

Street and Apt. No.

City, State, ZIP+4

Pfizer, Inc.
CT Corporation System
5601 South 59th Street, Suite C
Lincoln, NE 68516

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7019 2970 0000 3655 9542

# Certificate of Service

I hereby certify that on Thursday, September 10, 2020 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Walgreen's Boots Alliance Inc service method: No Service

Walmart Inc service method: No Service

Sanofi US Services Inc service method: No Service

Pfizer Inc service method: No Service

Sanofi-Aventis US LLC service method: No Service

Boehringer Ingelheim Pharma., Inc. service method: No Service

Chattem Inc service method: No Service

Walgreen's Co service method: No Service

Signature: /s/ Domina,David,A (Bar Number: 11043)

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200003227
Transaction ID: 0010667248
Filing Date: 09/10/2020 03:41:26 PM CDT

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln          NE 68508

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return     $ _____

Copy                   _____

Mileage ____miles      _____

  TOTAL               $ _____

Date: _____    BY: _____
                                      (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____Walgreen's Co_____

At the following address: ___Suite 1900 233 South 13 th
                             Lincoln, NE 68508_____

_____

_____

on the __4th__ day of __September____ __2020__, as required by Nebraska state law.

                          /s/ David A. Domina
Postage $ __8.00__   Attorney for: ___Plaintiff____

The return receipt for mailing to the party was signed on __September 8__ __2020__.

To: Walgreen's Co                From: David A Domina
    233 Southe 13th St, Ste 1900        2425 S 144th St
                                        Omaha, NE 68144
    Lincoln, NE 68508

## ATTACH RETURN RECEIPT & RETURN TO COURT

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Walgreen's Co
Prentice-Hall Corporation System, Inc., 233
South 13th Street   Suite 1900
Lincoln, NE 68508

9590 9402 5832 0034 0566 95

2. Article Number *(Transfer from service label)*

7019 2970 0000 3655 9566

PS Form 3811, July 2015 PSN 7530-02-000-9053

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X *Anthony M Roger*          ☐ Agent
                              ☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

OFFICIAL USE

Certified Mail Fee
$ 355

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $ 2.35
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery  $ _____
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here
SEP 1 2020

Postage
$ 1.60

Total Postage
$ 8.00

Sent To

Street and Ap

City, State, Zi

Walgreen's Co
Prentice-Hall Corporation System, Inc., 233
South 13th Street   Suite 1900
Lincoln, NE 68508

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7019 2970 0000 3655 9566

# Certificate of Service

I hereby certify that on Thursday, September 10, 2020 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Sanofi US Services Inc service method: No Service

Walgreen's Boots Alliance Inc service method: No Service

Pfizer Inc service method: No Service

Walmart Inc service method: No Service

Chattem Inc service method: No Service

Sanofi-Aventis US LLC service method: No Service

Walgreen's Co service method: No Service

Boehringer Ingelheim Pharma., Inc. service method: No Service

Signature: /s/ Domina,David,A (Bar Number: 11043)

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200003227
Transaction ID: 0009887248
Filing Date: 09/10/2020 01:12:26 PM CDT

## SERVICE RETURN

603416

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln            NE 68508

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____ . I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return        $ _____

Copy                        _____

Mileage _____miles          _____

  TOTAL                    $ _____

Date: _____        BY: _____
                                        (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail.
TO THE PARTY: _____ Walmart, Inc.

At the following address: _____ 5601 South 59th Street, Suite C
                                            Lincoln, NE 68516

_____

_____

on the __4th___ day of _September_____ _2020___, as required by Nebraska state law.

_____ /s/ David A. Domina _____

Postage $ ____8.00____    Attorney for: _____ Plaintiff _____

The return receipt for mailing to the party was signed on __Sept 8_____, _2020__ .

To: Walmart Inc                    From: David A Domina
    5601 South 59th St, Ste C            2425 S 144th St
                                         Omaha, NE 68144
    Lincoln, NE 68516

## ATTACH RETURN RECEIPT & RETURN TO COURT

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Joh Holbrook_ ☐ Agent ☐ Addressee<br>B. Received by (Printed Name) C. Date of Delivery |
| 1. Article Addressed to: _Walmart_<br><br>~~Walgreen~~'s Inc.<br>CT Corporation System<br>5601 South 59th St, Suite C<br>Lincoln, NE 68516 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>SEP 8 2020 |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 5832 0034 0479 21

| 3. Service Type | |
|---|---|
| ☐ Adult Signature | ☐ Priority Mail Express® |
| ☐ Adult Signature Restricted Delivery | ☐ Registered Mail™ |
| ☑ Certified Mail® | ☐ Registered Mail Restricted Delivery |
| ☐ Certified Mail Restricted Delivery | ☐ Return Receipt for Merchandise |
| ☐ Collect on Delivery | ☐ Signature Confirmation™ |
| ☐ Collect on Delivery Restricted Delivery | ☐ Signature Confirmation Restricted Delivery |
| ☐ ... Restricted Delivery | |

2. Article Number *(Transfer from service label)*
7019 2970 0000 3655 9580

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt



# U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

### OFFICIAL USE

Certified Mail Fee
$ 3.55

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)   $ 7.85
☐ Return Receipt (electronic)   $
☐ Certified Mail Restricted Delivery   $
☐ Adult Signature Required   $
☐ Adult Signature Restricted Delivery   $

Postage
$ 1.60

Total Postage and ...
$ 8.00

Sent To _Wal Mart_
~~Walgreen~~ 's Inc.
CT Corporation System
5601 South 59th St, Suite C
Lincoln, NE 68516

Street and Apt. No.
City, State, ZIP+4

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7019 2970 0000 3655 9580

# Certificate of Service

I hereby certify that on Thursday, September 10, 2020 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Walgreen's Boots Alliance Inc service method: No Service

Sanofi-Aventis US LLC service method: No Service

Walgreen's Co service method: No Service

Pfizer Inc service method: No Service

Sanofi US Services Inc service method: No Service

Walmart Inc service method: No Service

Chattem Inc service method: No Service

Boehringer Ingelheim Pharma., Inc. service method: No Service

Signature: /s/ Domina,David,A (Bar Number: 11043)

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200003227
Transaction ID: 0009987248
Filing Date: 09/10/2020 01:12:26 PM CDT

## SERVICE RETURN

603415

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln          NE 68508

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return       $ _____

Copy                        _____

Mileage ____miles           _____

   TOTAL              $ _____

Date: _____        BY: _____
                                      (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____ Walgreens Boots Alliance

At the following address: _____ Suite 1900 233 South 13th St
                                                Lincoln, NE 68508

_____

_____

on the ___4th___ day of ___September___ ___2020___, as required by Nebraska state law.

                                        /s/ David A. Domina
                                        _____

Postage $ ___8.00___   Attorney for: _____ Plaintiff

The return receipt for mailing to the party was signed on ___September 8___, ___2020___.

To: Walgreen's Boots Alliance Inc          From: David A Domina
    233 South 13th St, Ste 1900                  2425 S 144th St
                                                 Omaha, NE 68144
    Lincoln, NE 68508

## ATTACH RETURN RECEIPT & RETURN TO COURT





# Certificate of Service

I hereby certify that on Thursday, September 10, 2020 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Sanofi-Aventis US LLC service method: No Service

Walgreen's Boots Alliance Inc service method: No Service

Chattem Inc service method: No Service

Sanofi US Services Inc service method: No Service

Boehringer Ingelheim Pharma., Inc. service method: No Service

Pfizer Inc service method: No Service

Walgreen's Co service method: No Service

Walmart Inc service method: No Service

Signature: /s/ Domina,David,A (Bar Number: 11043)

| Image ID: D00603412D02 | **SUMMONS** | Doc. No.    603412 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln                    NE 68508

Gary Luedtke v. Sanofi-Aventis US LLC

Case ID: CI 20    3227

TO:  Boehringer Ingelheim Pharma., Inc.

**FILED BY**

Clerk of the Lancaster District Court
09/08/2020

You have been sued by the following plaintiff(s):

Gary Luedtke                    Juliet Andersen

Plaintiff's Attorney:   David A Domina
Address:                2425 S 144th St
                        Omaha, NE 68144

Telephone:              (402) 493-4100

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: SEPTEMBER 8, 2020    BY THE COURT:    _Troy L Ciirk_
                                            Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Boehringer Ingelheim Pharma., Inc.
        c/o CT Corporation
        67 Burnside Ave
        East Hartford, CT 06108-3408

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No.    603412 |
|---|---|

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln              NE 68508

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:
_____

by _____

_____

_____

as required by Nebraska state law.

Service and return       $ _____

Copy                          _____

Mileage ____miles           _____

  TOTAL                 $ _____

Date: _____       BY: _____
                                        (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                              _____

Postage $ _____     Attorney for: _____

The return receipt for mailing to the party was signed on _____,_____.

To: Boehringer Ingelheim Pharma., Inc.        From: David A Domina
    c/o CT Corporation                              2425 S 144th St
    67 Burnside Ave                                 Omaha, NE 68144
    East Hartford, CT 06108-3408

## ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID:<br>D00603411D02 | **SUMMONS** | Doc. No.    603411 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln                NE 68508

Gary Luedtke v. Sanofi-Aventis US LLC

Case ID: CI 20    3227

TO:  Boehringer Ingelheim Pharma., Inc.

**FILED BY**
Clerk of the Lancaster District Court
09/08/2020

You have been sued by the following plaintiff(s):

Gary Luedtke                    Juliet Andersen

Plaintiff's Attorney:   David A Domina
Address:                2425 S 144th St
                        Omaha, NE 68144

Telephone:              (402) 493-4100

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: SEPTEMBER 8, 2020    BY THE COURT:    _Troy L Hawk_
                                            Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Boehringer Ingelheim Pharma., Inc.
        Attn Boers Jean- Michel
        900 Ridgebury Rd
        Ridgefield, CT 06877

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No.    603411 |
|---|---|

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln             NE 68508

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:
_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                      _____

Mileage _____miles        _____

   TOTAL               $ _____

Date: _____      BY: _____
                                        (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE
Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                              _____

Postage $ _____      Attorney for: _____

The return receipt for mailing to the party was signed on _____,_____.

To: Boehringer Ingelheim Pharma., Inc.      From: David A Domina
    Attn Boers Jean- Michel                       2425 S 144th St
    900 Ridgebury Rd                              Omaha, NE 68144
    Ridgefield, CT 06877

## ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID:<br>D00603410D02 | **SUMMONS** | Doc. No.    603410 |
|---|---|---|

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln              NE 68508

Gary Luedtke v. Sanofi-Aventis US LLC

Case ID: CI 20    3227

TO:  Chattem Inc

**FILED BY**

Clerk of the Lancaster District Court
09/08/2020

You have been sued by the following plaintiff(s):

Gary Luedtke                    Juliet Andersen

Plaintiff's Attorney:   David A Domina
Address:                2425 S 144th St
                        Omaha, NE 68144

Telephone:              (402) 493-4100

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: SEPTEMBER 8, 2020    BY THE COURT:   _Troy L Hawk_
                                            Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Chattem Inc
        Attn: Theodore Whitefield Jr
        1715 West 38th St
        Chattanooga, TN 37409

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No. | 603410 |
|---|---|---|

```
LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln            NE 68508
```

To:

Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                      _____

Mileage ____miles         _____

   TOTAL              $ _____

Date: _____      BY: _____
                                          (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                 _____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

To: Chattem Inc                    From: David A Domina
    Attn: Theodore Whitefield Jr         2425 S 144th St
    1715 West 38th St                    Omaha, NE 68144
    Chattanooga, TN 37409

## ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID:<br>D00603413D02 | SUMMONS | Doc. No.   603413 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln          NE 68508

Gary Luedtke v. Sanofi-Aventis US LLC

Case ID: CI 20    3227

TO:  Pfizer Inc

**FILED BY**

Clerk of the Lancaster District Court
09/08/2020

You have been sued by the following plaintiff(s):

Gary Luedtke                    Juliet Andersen

Plaintiff's Attorney:  David A Domina
Address:               2425 S 144th St
                       Omaha, NE 68144

Telephone:             (402) 493-4100

A copy of the complaint/petition is attached. To defend this lawsuit, an appropriate response must be served on the parties and filed with the office of the clerk of the court within 30 days of service of the complaint/petition. If you fail to respond, the court may enter judgment for the relief demanded in the complaint/petition.

Date: SEPTEMBER 8, 2020    BY THE COURT: _Troy L Hawk_
                                          Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE COMPLAINT/PETITION ON:

        Pfizer Inc
        c/o CT Corporation System
        5601 South 59th ST Ste C
        Lincoln, NE 68516

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue, and file with the court clerk proof of service within ten days after the signed receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No. 603413 |
|---|---|

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln          NE 68508

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                       _____

Mileage ____miles          _____

  TOTAL              $ _____

Date: _____       BY: _____
                                          (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                 _____

Postage $ _____   Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

To: Pfizer Inc
    c/o CT Corporation System
    5601 South 59th ST Ste C
    Lincoln, NE 68516

From: David A Domina
      2425 S 144th St
      Omaha, NE 68144

ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID:<br>D00603406D02 | **SUMMONS** | Doc. No.   603406 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln                NE 68508

Gary Luedtke v. Sanofi-Aventis US LLC

Case ID: CI 20    3227

TO:  Sanofi US Services Inc

**FILED BY**
Clerk of the Lancaster District Court
09/08/2020

You have been sued by the following plaintiff(s):

Gary Luedtke                    Juliet Andersen

Plaintiff's Attorney:    David A Domina
Address:                 2425 S 144th St
                         Omaha, NE 68144

Telephone:               (402) 493-4100

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: SEPTEMBER 8, 2020    BY THE COURT:  *Troy L Hawk*
                                          Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Sanofi US Services Inc
        Attn: Olivier Brandicourt
        55 Corporate Dr
        Bridgewater, NJ 08807

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No.    603406 |
| --- | --- |

```
            LANCASTER DISTRICT COURT
            575 S. 10th Street - 3rd Floor
            SEPARATE JUVENILE COURT-4th Floor
            Lincoln              NE 68508
```

To:

Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____.  I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons

upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return     $ _____

Copy                       _____

Mileage _____miles        _____

  TOTAL          $ _____

Date: _____     BY: _____
                                       (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                   _____

Postage $ _____     Attorney for: _____

The return receipt for mailing to the party was signed on _____,_____.

```
To: Sanofi US Services Inc          From: David A Domina
    Attn: Olivier Brandicourt             2425 S 144th St
    55 Corporate Dr                       Omaha, NE 68144
    Bridgewater, NJ 08807
```

# ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID:<br>D00603405D02 | **SUMMONS** | Doc. No.   603405 |
| --- | --- | --- |

```
           IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
                575 S. 10th Street - 3rd Floor
                SEPARATE JUVENILE COURT-4th Floor
                Lincoln               NE 68508
```

Gary Luedtke v. Sanofi-Aventis US LLC

                                             Case ID: CI 20     3227

TO:  Sanofi-Aventis US LLC

**FILED BY**
Clerk of the Lancaster District Court
09/08/2020

You have been sued by the following plaintiff(s):

     Gary Luedtke                          Juliet Andersen

```
Plaintiff's Attorney:   David A Domina
Address:                2425 S 144th St
                        Omaha, NE 68144

Telephone:              (402) 493-4100
```

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: SEPTEMBER 8, 2020    BY THE COURT:  *Troy L Hawk*
                                              Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

```
          Sanofi-Aventis US LLC
          c/o Corporation Service Company
          251 Little Falls Dr
          Wilmington, DE 19808
```

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No.    603405 |
|---|---|

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln              NE 68508

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                        _____

Mileage _____miles       _____

   TOTAL            $ _____

Date: _____      BY: _____
                                 (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

_____

Postage $ _____      Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

To: Sanofi-Aventis US LLC                    From: David A Domina
    c/o Corporation Service Company         2425 S 144th St
    251 Little Falls Dr                     Omaha, NE 68144
    Wilmington, DE 19808

## ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID: | **SUMMONS** | Doc. No.   603404 |
| D00603404D02 | | |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln                NE 68508

Gary Luedtke v. Sanofi-Aventis US LLC

Case ID: CI 20     3227

TO:  Sanofi-Aventis US LLC

**FILED BY**

Clerk of the Lancaster District Court
09/08/2020

You have been sued by the following plaintiff(s):

Gary Luedtke                          Juliet Andersen

Plaintiff's Attorney:   David A Domina
Address:                2425 S 144th St
                        Omaha, NE 68144

Telephone:              (402) 493-4100

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: SEPTEMBER 8, 2020     BY THE COURT: _Troy L. Hawk_
                                          Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Sanofi-Aventis US LLC
        Attn: Oliver Brandicourt
        55 Corporate Dr
        Bridgewater, NJ 08807

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No.   603404 |
|---|---|

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln              NE 68508

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____.  I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:
_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                          _____

Mileage ____miles          _____

    TOTAL              $ _____

Date: _____      BY: _____
                                             (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                   _____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____,_____.

To: Sanofi-Aventis US LLC              From: David A Domina
    Attn: Oliver Brandicourt                  2425 S 144th St
    55 Corporate Dr                           Omaha, NE 68144
    Bridgewater, NJ 08807

# ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID: | **SUMMONS** | |
|---|---|---|
| D00603415D02 | | Doc. No.    603415 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln          NE 68508

Gary Luedtke v. Sanofi-Aventis US LLC

Case ID: CI 20    3227

TO:  Walgreen's Boots Alliance Inc

**FILED BY**

Clerk of the Lancaster District Court
09/08/2020

You have been sued by the following plaintiff(s):

    Gary Luedtke                    Juliet Andersen

Plaintiff's Attorney:   David A Domina
Address:                2425 S 144th St
                        Omaha, NE 68144

Telephone:              (402) 493-4100

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: SEPTEMBER 8, 2020    BY THE COURT: _Troy L. Hawk_
                                             Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Walgreen's Boots Alliance Inc
        CSC-Lawerys Incorporation Services
        Ste 1900 233 S 13th St
        Lincoln, NE 68508

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No.    603415 |
|---|---|

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln           NE 68508

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons

upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                      _____

Mileage _____miles        _____

     TOTAL            $ _____

Date: _____    BY: _____
                                             (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                     _____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

To: Walgreen's Boots Alliance Inc          From: David A Domina
    CSC-Lawerys Incorporation Services            2425 S 144th St
    Ste 1900 233 S 13th St                        Omaha, NE 68144
    Lincoln, NE 68508

# ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID:<br>D00603414D02 | **SUMMONS** | Doc. No.   603414 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln          NE 68508

Gary Luedtke v. Sanofi-Aventis US LLC

Case ID: CI 20    3227

TO:  Walgreen's Co

**FILED BY**

Clerk of the Lancaster District Court
09/08/2020

You have been sued by the following plaintiff(s):

Gary Luedtke                    Juliet Andersen

Plaintiff's Attorney:   David A Domina
Address:                2425 S 144th St
                        Omaha, NE 68144

Telephone:              (402) 493-4100

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: SEPTEMBER 8, 2020    BY THE COURT:    _Troy L Cook_
                                            Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Walgreen's Co
        Prentice-Hall Corporation System
        Ste 1900 233 South 13th St
        Lincoln, NE 68508

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No.  603414 |
|---|---|

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln            NE 68508

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____.  I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return    $ _____

Copy                      _____

Mileage _____miles        _____

   TOTAL            $ _____

Date: _____    BY: _____
                                    (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                              _____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

To: Walgreen's Co                From: David A Domina
    Prentice-Hall Corporation System      2425 S 144th St
    Ste 1900 233 South 13th St            Omaha, NE 68144
    Lincoln, NE 68508

# ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID: | **SUMMONS** | |
|---|---|---|
| D00603416D02 | | Doc. No.   603416 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln                NE 68508

Gary Luedtke v. Sanofi-Aventis US LLC

Case ID: CI 20     3227

TO:  Walmart Inc

### FILED BY

Clerk of the Lancaster District Court
09/08/2020

You have been sued by the following plaintiff(s):

Gary Luedtke                    Juliet Andersen

Plaintiff's Attorney:     David A Domina
Address:                  2425 S 144th St
                          Omaha, NE 68144

Telephone:                (402) 493-4100

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: SEPTEMBER 8, 2020     BY THE COURT: _Troy L. Clark_
                                            Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Walmart Inc
        CT Corporation System
        5601 South 59th St Ste C
        Lincoln, NE 68516

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

|  | SERVICE RETURN |  | Doc. No. 603416 |

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln        NE 68508

To:
Case ID: CI 20    3227 Gary Luedtke v. Sanofi-Aventis US LLC

Received this Summons on _____,_____.  I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return    $ _____

Copy                  _____

Mileage ____miles     _____

    TOTAL            $ _____

Date: _____    BY: _____
                                    (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE
Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

_____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

To: Walmart Inc                    From: David A Domina
    CT Corporation System                2425 S 144th St
    5601 South 59th St Ste C             Omaha, NE 68144
    Lincoln, NE 68516

# ATTACH RETURN RECEIPT & RETURN TO COURT

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200003227
Transaction ID: 0011630130
Filing Date: 09/04/2020 12:44:31 PM CDT

## District Court, Lancaster County, Nebraska

| | |
|---|---|
| **Gary Luedtke and Juliet Andersen, Husband and Wife,** | **Case No.: CI 20-_____** |
| **Plaintiffs,** | |
| **v.** | **Praecipe for Summons** |
| **Sanofi-Aventis US LLC; Sanofi US Services, Inc.; Chattem Inc.; Boehringer Ingelheim Pharmaceuticals, Inc.; and Pfizer, Inc., Walgreen, Co, Walgreen's Boots Alliance, Inc., Walmart Stores, Inc.** | |
| **Defendants.** | |

TO:    Clerk of the District Court

Pursuant to *Neb Rev Stat* §§ 221-2,212 *et seq*., please issue summonses to be returned to us for service by Certified Mail, directed to the following:

| | |
|---|---|
| Sanofi-Aventis US LLC<br>Attn: Olivier Brandicourt<br>or other Chief Executive Officer<br>and Adam Gluck, Head of Sanofi U.S.<br>Secretary or Designated Custodian of Records<br>55 Corporate Drive<br>Bridgewater, New Jersey 08807 | Sanofi-Aventis US LLC<br>c/o Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808 |
| Sanofi US Services, Inc.<br>Attn: Olivier Brandicourt<br>or other Chief Executive Officer<br>and Adam Gluck, Head of Sanofi U.S.<br>Secretary or Designated Custodian of Records | Chattem, Inc.<br>Attn: Theodore K. Whitefield, Jr.<br>Chief Executive Officer and Secretary or<br>Designated Custodian of Records<br>1715 West 38th Street |

| | |
|---|---|
| 55 Corporate Drive<br>Bridgewater, New Jersey 08807 | Chattanooga, TN 37409 |
| Boehringer Ingelheim Pharmaceuticals, Inc<br>Attn Boers Jean-Michel or<br>other Chief Executive Officer and<br>Secretary or Designated Custodian of Records<br>900 Ridgebury Rd<br>Ridgefield, Connecticut 06877 | Boehringer Ingelheim Pharmaceuticals, Inc<br>c/o CT Corporation<br>67 Burnside Ave<br>East Hartford, CT 06108-3408 |
| Pfizer, Inc.<br>CT Corporation System<br>5601 South 59th Street, Suite C,<br>Lincoln, NE 68516 | Walgreen's Co<br>Prentice-Hall Corporation System, Inc.,<br>Suite 1900 233 South 13th Street<br>Lincoln, NE 68508 |
| Walgreen's Botts Alliance, Inc.<br>CSC-Lawyers Incorporating Service<br>Company, Suite 1900,<br>233 South 13th Street<br>Lincoln, NE 68508. | Walmart, Inc.<br>CT Corporation System<br>5601 South 59th Street, Suite C<br>Lincoln, NE 68516 |

Plaintiff elects to make service of process by certified mail.

September 4, 2020

Gary Luedtke and Juliet Andersen,
Husband and Wife, Plaintiffs

By: David A. Domina, #11043
Domina Law Group pc llo
2425 S. 144th Street
Omaha, NE 68144
(402) 493-4100

*Plaintiffs' Lawyers*

2

10C1928

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI200003227
Transaction ID: 0011630130
Filing Date: 09/04/2020 12:44:31 PM CDT

## District Court, Lancaster County, Nebraska

| | |
|---|---|
| **Gary Luedtke and Juliet Andersen,**<br>**Husband and Wife,** | **Case No.: CI 20-_____** |
| **Plaintiffs,** | |
| **v.** | **Complaint**<br>**Jury Demand** |
| **Sanofi-Aventis US LLC;**<br>**Sanofi US Services, Inc.;**<br>**Chattem Inc.;**<br>**Boehringer Ingelheim**<br>**Pharmaceuticals, Inc.; and**<br>**Pfizer, Inc.,**<br>**Walgreen, Co,**<br>**Walgreen's Boots Alliance, Inc.,**<br>**Walmart Stores, Inc.** | **And**<br>**Trial Location Selection** |
| **Defendants.** | |

## Contents

| | |
|---|---|
| Overview | ¶1 |
| Jurisdiction, Venue, Parties | ¶4 |
| Factual Allegations | ¶14 |
|     A.    Plaintiff's Use of Zantac® | ¶23 |
|     B.    Zantac® OTC | ¶26 |
|     C.    NDMA Is Dangerous | ¶49 |
|     D.    Failures of Defendants to Disclose | ¶55 |
| First Theory: Strict Liability (Failure to Warn) | ¶60 |
| Second Theory: Strict Liability in Tort | ¶70 |
| Third Theory: Negligence | ¶85 |
| Fourth Theory: Breach of Express Warranty | ¶93 |
| Fifth Theory: Breach of Implied Warranties | ¶103 |
| Sixth Theory: *Deceptive Trade Practices Act* | ¶108 |
| Seventh Theory: Nebraska *Consumer Protection Act* | ¶113 |
| First Claim: Mr. Luedtke | ¶117 |
| Second Claim: Mrs. Andersen | ¶121 |
| Request for Relief; Jury Demand | ¶123; ¶127 |

Plaintiffs allege:

## Overview

1.      Gary Luedtke and Juliet Andersen, husband and wife, sue for Mr. Luedtke's personal injuries and Ms. Andersen's derivative consortium claim.  Plaintiff contracted prostate cancer (Gleason 3=4=7), diagnosed on or about August 9, 2012. He could not discover the cause of his cancer until 2020 after Zantac® was declared to be carcinogenic and ordered pulled from the market by the U.S. Food & Drug Administration on April 1, 2020. Plaintiff used over time counter brand name Zantac® from approximately January 2000 until 2017. His cancer was caused by  Zantac®.  Zantac® has been recalled by the U.S. Food and Drug Administration because it causes cancer in human users.  It is classified as probably carcinogenic by the World Health Organization, the International Agency for the Research of Cancer, the United States Food and Drug Administration, and the governing bodies of numerous other governments.

2.       Zantac® was partially pulled from the shelves in the United States about March 20, 2020 after information surfaced in September 2019 that the substances within Ranitidine are highly carcinogenic. On April 1, 2020 all Zantac®  products were ordered recalled from all sources by the FDA.[1] Earlier, on October 18, 2019, Defendant Sanofi-Aventis US LLC announced publicly that Zantac® 150, Zantac® 150 Cool Mint, Zantac® 75 (OTC Products)  were voluntarily recalled by it following  an alert by the FDA on September 13, 2019 that "some ranitidine medicines, including Zantac® OTC, could contain NDMA at low levels and asked manufacturers to conduct testing."[2]

3.      Plaintiffs sue for special and general damages.

## Jurisdiction, Venue, Parties

---

[1] FDA Public Announcement at https://www.fda.gov/news-events/press-announcements/fda-requests-removal-all-ranitidine-products-zantac-market

[2] Sanofi company announcement 10.18.2019 posted by FDA at https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/sanofi-provides-update-precautionary-voluntary-recall-zantac-otc-us

2

4.    The District Court has subject matter jurisdiction pursuant to *Neb Rev Stat* § 24-302.  Venue is proper in Lancaster County, Nebraska where Plaintiffs reside, the Zantac® medication was sold and ingested, and where substantial part of the activity giving rise to this claim occurred.  *Neb Rev Stat* § 25-403.01.

5.    Plaintiffs are Gary Luedtke, born in 1955 (where used in singular "Plaintiff refers to him) and his spouse Juliet Andersen.  Plaintiffs were married in 1986.  Plaintiff suffers from cancer caused by Zantac®.

6.    The Defendants are:

6.1.    Sanofi-Aventis US LLC, a Delaware limited liability company.  Its principle place of business is at 55 Corporate Drive, Bridgewater, New Jersey, 08807.  It is believed to be a wholly owned subsidiary of a French company named Sanofi.

6.2.    Sanofi US Services Inc., a Delaware corporation.  Its principle place of business is also at 55 Corporate Drive, Bridgewater, New Jersey, 08807.  It is also believed to be a wholly owned subsidiary of the French company, Sanofi.

6.3.    Chattem Inc., a Tennessee corporation with its principle place of business at 1715 West 38th Street, Chattanooga, Tennessee, 37409.  It is also believed to be a subsidiary of the French company, Sanofi.

6.4.    Boehringer Ingelheim Pharmaceuticals, Inc. ("BIP").  BIP is a Delaware corporation with its principle place of business at 900 Ridgebury Road, Ridgefield, Connecticut, 06877.  It is a subsidiary of the German company Boehringer Ingelheim Corporation.

6.5.    Pfizer, Inc., manufactured and controlled Zantac® from at least 2000 through 2006 and became the successor to the liabilities of Warner-Lambert, Inc., which it acquired and merged into Pfizer in 2000.  Pfizer through its own direct ownership after acquiring Warner-Lambert and prior to them was responsible for the marketing and distribution of Zantac® from approximately 1990 or earlier to 2006

3

when it sold the product to Defendant Boehringer Ingelheim Pharmaceuticals, Inc. Pfizer was the original NDMA holder for OTC Zantac®.

6.6.  Walgreen's Co. is Delaware Corporation with its principle place of business at 200 Wilmot Rd, Deerfield, Illinois 60015. Walgreen's Co is a citizen of Delaware and Illinois.  Its registered agent authorized to receive process in Nebraska is: The Prentice-Hall Corporation System, Inc., Suite 1900 233 South 13th Street, Lincoln, NE 68508.

6.7.  Walgreen's Boots Alliance, Inc., is a Delaware Corporation with its principle place of business is 300 Wilmot Rd, Deerfield, Illinois 60015. Walgreen's Boots Alliance, Inc., is a citizen of Delaware and Illinois.  Walgreen's Boots Alliance, Inc., registered agent authorized to receive process in Nebraska is CSC-Lawyers Incorporating Service Company, Suite 1900, 233 South 13th Street, Lincoln, NE 68508.

6.8.  Walmart Inc., formerly f/k/a Wal-Mart Stores, Inc., is Delaware Corporation with its principle place of business at 702 SW 8th Street, Bentonville, Arkansas 72716. Walmart is a citizen of Delaware and Arkansas. Walmart's registered agent authorized to receive process in Nebraska is: CT Corporation System, 5601 South 59th Street, Suite C, Lincoln, NE 68516.

.

Praecipes for summonses are filed with this Complaint.  All other Defendants are subject to the jurisdiction of Nebraska courts because they contracted to sell and deliver Zantac® here and caused tortious injuries to Plaintiffs here.[3]  Service of process may be made as provided by the Nebraska Business Corporations Act.[4]

---

[3] *Neb Rev Stat* § 25-536.
[4] *Neb Rev Stat* § 21-2,212(b).

 Sanofi-Aventis US LLC, Sanofi Services Inc. and Chattem Inc. (collectively "Sanofi" or sometimes "Sanofi Defendants") control the U.S. rights to the over-the-counter Zantac® and have do so since January 2017.[5] They are the successors in interest to BIP.

7.     The Sanofi Defendants manufactured and distributed Zantac® over the counter in the United States during this period.  Plaintiff routinely used Zantac® manufactured and distributed by the Sanofi Defendants.

8.     At relevant times between October 2006[6] and January 2017, BIP owned the U.S. rights to over-the-counter Zantac® and manufactured and distributed it in the United States during that period. Plaintiff used BIP's over-the-counter Zantac® throughout this time.

9.     Walgreen's defendants purchased ranitidine, repackaged it and or relabeled under its own brand and sold it at retail in its own stores and through its pharmacies and drug store. Walgreen's  also sold Zantac® in its stores in Nebraska and elsewhere.

10.     Walmart, Inc. purchased ranitidine, repackaged it and or relabeled under its own brand in a Sam's brand and sold it at retail in its own stores and through its pharmacies and drug store elements of its department stores. It also sold Zantac® in its stores in Nebraska and elsewhere.   All allegations apply to the "repackager" Defendants and retailers in this complaint apply to Defendant Walmart Inc.

11.     Walmart  continued to sell generic ranitidine until on or about September 26, 2019 when generic manufacture Apotex and Walmart,   voluntarily recalled all ranitidine products and removed them from the shelves

12.     AmerisourceBergen and Amneal and Apotex manufactured Ranitidine and sold and distributed it to retailers believed to include Walmart.

13.     Apotex Corporation manufactured itself or with joint venture a related

---

[5] Pare, Mike, *Chattem adds Zantac, Dulcolax to portfolio*, Chattanooga Times Free Press (Tenn.) (Feb. 8, 2017).

[6] Boehringer Ingelheim Pharmaceuticals Inc. *Announces Agreement to Acquire Zantac from Johnson & Johnson and Pfizer Consumer Healthcare Business*, Business Wire (Oct. 12, 2006)

1094935

corporation, Apotex, Inc. a Canadian corporation and, purchased and repackaged ranitidine and relabeled it under its own brand and is believed to have done so to create the store brand for Walmart. It is believed to have supplied ranitidine to retailers including Walmart

**Factual Allegations**

14.     Plaintiff enjoyed generally good health from the time of his birth until 2014. He did have acid reflux and indigestion problems requiring antacid medications.

15.     Plaintiff used over-the-counter Zantac®, which he used when purchased in drug stores and retail outlets as marketed by the Sanofi Defendants and BIP, and before them by BIP.

16.     Plaintiff has no history of prostate cancer and no history of other cancers of the stomach or abdominal tract, intestinal or similar cancers in his family or personal background.  He has no genetic or other pre-dispositions to renal cancer.  He has generally been in reasonable control of his weight, has not suffered hypertension or been treated for prostate cancer prior to his diagnosis and has not suffered from syndromes that cause an increase in the risk of prostate cancer prior to his diagnosis.  He has not suffered from:

- von Hippel-Lindau Disease
- Birt-Hogg-Dube Syndrome
- Tuberous Chlorosis Complex
- Hereditary Papillary Renal Cell Carcinoma
- Familial Renal Cancer
- Exposure to Cadmium
- Exposure to herbicides with known associations with Renal Cancer
- Overuse of medications.
- Hypertension

17.     In August 2012, Plaintiff was diagnosed with prostate cancer.  He underwent active treatment through a complex array of 45 treatments with extensive follow up care extending into and beyond 2016.  His prospects for permanent remission are not known. Mr. Luedtke expects to live with the   threat of   recurrent cancer for the rest of his life.

6

18.     Plaintiff's illness imposed burdens upon his spouse as his caregiver.  Since his ability to engage in the activities of daily living, and his employment, were and diminished, the spousal plaintiff is deprived of her husband's care, comfort and companionship, support, services, advice, counsel, love and affection as it would be extended normally.  She was also called upon to provide emotional and physical comfort care and support and expects to be required to do so throughout his battle against cancer in his body.  Ms. Andersen claims general damages for her consortium injuries.

19.     Plaintiff's work life and personal life were disrupted by his diagnosis and treatment. His cancer diagnosis caused  depression, anxiety, sleep disturbance, loss of self-confidence, diminished ability to focus and be attentive, and disturbance of his mental health and status.

20.     Plaintiff also experienced  physical and emotional pain, illness, discomfort, and physical distress, loss of strength, diminished stamina, and general inability to perform his activities of daily living and work, on a temporary basis.  It is expected that these circumstances will be permanent, although the degree of permanence is not yet known.  Before his cancer, he had a foreseeable life expectancy of at least 19.0 years.[7] He is now permanently physically impaired.

21.      Plaintiffs' special damages   include:

     21.1.   Lost earnings

     21.2.   Lost earning capacity

     21.3.   Medical expenses for physicians and medical institutions

     21.4.   Pharmacological and pharmaceutical expenses

     21.5.   Expenses for travel to and from medical care.

22.     Leave is requested to amend this Complaint to plead the precise amount of special damages incurred as of the time of the pre-trial conference, or at trial.

---

[7]  U.S. Social Security Administration, https://www.ssa.gov/oact/STATS/table4c6.html

1094935

## A. Plaintiff's Use of Zantac®

23.    By 2012 Plaintiff had used Zantac® extensively. However, had he known the risks and had they been disclosed to him and other consumers on the drug's label and through other means, he would not have used it. No Defendant disclosed to consumers that Zantac® has a critical defect that because it produces high quantities of N-Nitrosodimethylamine ("NDMA"), a chemical the World Health Organization's International Agency for Research of Cancer ("IARC") classified as "clearly carcinogenic".

24.   Plaintiff used Zantac® with his physician's knowledge as follows:

| Dates | Uses- Average | Type | Dosage | Purpose |
|---|---|---|---|---|
| From January 2000 Until 2017 | 6 days a week | Zantac® 150 Tablets<br><br>Or Ranitine Generic 150 mg (or 2, 75 mg)<br><br>– Purchased OTC | 1x/day | Antacid; prevention of indigestion |

25.    Throughout the time Plaintiff used Zantac® he used the drug products in accordance with label directions and for the  intended purposes. He did not alter or modify the Zantac® products and used them as packaged and sold, with no changes.

## B. Zantac®

26.    Until recalled from the market in 2020, for many years, Zantac® was the most popular over-the-counter medication, also available in prescription dosages, to decrease stomach acid, reduce heartburn and acid indigestion, treat or ameliorate the anguish of gastric ulcers, and reduce the adverse consequences of "sour" stomach and other gastro intestinal conditions.[8] Zantac® was developed in 1983 and became available as a

[8] Richard Wright, M.D. *How Zantac Became the Best-Selling-Drug in History* 16(4) J.HealthcareMarketing24 (Winter 1996)

non-prescription drug in some dosages in 1995. Its generic version became available the following year.

27.     Zantac® is the Sanofi and brand name version of the drug ranitidine. Zantac® was first sold in the United States in 1983.  Within three (3) years, its sales volume reportedly exceeded $1.0 billion in sales.[9]  Zantac® remained among the most widely used and popular tablet brands of antacid in the United States through 2018 and into 2019.[10] Plaintiffs believe this likely continued until the product was recalled in 2020.

28.     Zantac® is widely referred to as an antacid and used for this purpose without consumers focusing on the distinction between neutralizing acids in the stomach and preventing their production.[11]

29.     Over-the-counter Zantac® like that used by Plaintiff is sold in the form of tablets containing dosages of 75 mg (Zantac® 75) and 150 mg dosages.  The product is also prescribed for use by injection.  Zantac® has an adverse, clearly carcinogenic effect on the human body.  When ingested, Zantac® produces within the body quantities of a deadly chemical known as N-Nitrosodimethylamine (NDMA).  The World Health Organization described this medication as clearly carcinogenic.[12]

30.     Ranitidine is called an H2-receptor antagonist.  It was commonly prescribed for gastro esophageal reflex disease (GERD) as well as for peptic ulcers and other matters. H2-receptor antagonist (H2RAs) selectively block the histamine-2 receptor in gastro parietal cells.  This produces decreased production of gastric acid.[13]

31.     Ranitidine produces NDMA in the body.   Testing by independent laboratories in 2019 established dramatically elevated levels of NDMA produced in the

---

[9] *Id.*

[10] While Zantac is routinely referred to as an antacid, it actually has a mode of action that works by reducing the amount of acid the stomach makes, instead of by neutralizing acids already produced by the stomach.  Ranitidine, oral tablet, health line, https://www.healthline.com/health/ranitidine-oral-tablet.

[11] *See Leading Antacid Tablet Brands in the United States in 2018 Based on Sales,* Statista (https://www.statista.com/statistics/194544/leading-us-antacid-tablet-brands-in-2013-based-on-sales/).

[12] RG Liteplo et al. *Concise International Chemical Assessment Document 38*, N- Nitrosodimethylamine, World Health Organization (2002), https://www.who.int/ipcs/publications/cicad/en/cicad38.pdf.

[13] *Id.*

bodies of patients who used Zantac® and other Ranitidine products. N-Nitrosodimethylamine (NDMA) is an organic chemical known to be in a family of potent carcinogens, the dangers of which to human health have been recognized since at least 1979 when researchers observed that it caused cancer in nearly every laboratory animal tested. NDMA is so dangerous that it is no longer produced or commercially used in the United States except for research, and then only as a poison.

32.     The International Agency for Research of Cancer (IARC) classified NDMA as a group two (2) "probably carcinogenic to humans" substance.[14] The US Environmental Protection Agency also classified NDMA as a probable human carcinogen. As early as 1980 products with unsafe levels of and DMA were recalled by manufacturers or at the direction of the FDA.

33.     In 2014, research scientists conducting a case control study in Newfoundland and Labrador in Ontario Canada found an increased risk of gastrointestinal cancer in humans ingesting Zantac® and ranitidine.[15] Doses of ranitidine in combination with nitrite produce DNA fragmentation in animal studies[16], and adverse consequences in humans were found by researches.[17]

34.     On July 13, 2018, heart medications found to produce unsafe levels of NDMA in the human body were recalled by the FDA because they did not meet FDA safety standards.[18] These recalls stemmed from detection of an impurity called N-

---

[14] IARC, Overall Evaluations of Carcinogenicity: An Updating of IARC Monographs Volumes 1-42, *IARC Monograph Evaluation Carcinogenic Risks Human Supplement 7, 1-440 (1987)*.

[15] ZHU, Y et al. Dietary N-Nitroso compounds and risk of colorectal cancer: A case control study in Newfoundland and Labrador in Ontario Canada, 111 British Journal of Nutrition 1109-117 (2014).

[16] Brambilla, G. et al., Genotoxic effects in rodents given oral doses of ranitidine and sodium nitrite, for carcinogenesis 1281-1285 (1983)

[17] Zeng & Mitch, WA, *Oral Intake of Ranitidine Increases Urinary Excretion of N-Nitrosodimethylamine*, 6 carcinogenesis 625-634 (2016).

[18] FDA Announcement, July 13, 2018, https://www.fda.gov/news-events/press-announcements/fda-announces-voluntary-recall-several-medicines-containing-valsartan-following-detection-impurity

Nitrosodimethylamine (NDMA) -- a probable human carcinogen -- in the valsartan active pharmaceutical ingredient (API) the affected products contained.[19]

35.     In Autumn of 2019, testing laboratories Valisure LLC and Valisure RX LLC (together "Valisure") detected extraordinarily high NDMA levels in all lots of ranitidine tested across multiple manufacturers of products including Zantac®.[20]  Valisure notified the FDA of its filings September 13, 2019.  Valisure is an online pharmacy licensed in at least thirty-eight (38) states. It has an analytical laboratory that it is accredited by the International Organizations for Standardization.  Valisure is also registered with the Drug Enforcement Agency of the United States and the US Food and Drug Administration. Valisure's test established that "ranitidine can react with itself in standard analysis conditions…at a high efficiency to produce NDMA dangerous levels well in excess of the permissible daily intake limit for this probable carcinogen."[21]

36.     The FDA announced a human permissible intake maximum limit of 96 ng of NDMA per day.[22]  Yet, more than thirty (30) years ago the Agency for Toxic Substances and Disease Registry warned that NDMA, in high quantities, was dangerous and the exposures to NDMA caused liver damage in laboratory animals and usually resulted in internal bleeding and death.[23]

37.     The Valisure testing, using gas chromatography and mass spectrometry ("GC/MS") testing as prescribed by the FDA detected 2,511,469 ng of NDMA per 150 mg tablet of Zantac®.  The FDA protocol detected NDMA in each Zantac® tablet at an order of magnitude of more than 25,000 times the FDA permissible intake limit.

---

[19]  AAFP NEWS STAFF, July 25, 2018, https://www.aafp.org/news/health-of-the-public/20180725valsartan.html

[20] Valisure Citizen Petition to FDA ("Citizen Petition") at 6 available,
https://hbw.pharmaintelliegence.informa.com/~/media/Supporting%20Documents/Rose%20Sheet/2019/09/9%20Sept%202019%20Valisure%20Ranitidine%20Petition.pdf

[21] *Id.*

[22] *FDA Updates and Press Announcements on Angiotension II Receptor Blocker (ARB) Recalls*, FDA (updated August 28, 2019) (Setting "Interim Limits for NDMA")

[23] Agency for Toxic Substances & Disease Registry, *Public Health Statement for N- Nitrosodimethylamine 2* (December 1989), https://www.atsdr.cdc.gov/ToxProfiles/tp141-c1-b.pdf.

38.     The National Institutes of Health noted that the typical recommended dose of ranitidine for therapy of peptic ulcer disease in adults is 150 mg twice daily or 350 mg once nightly for four (4) to eight (8) weeks with maintenance doses of 150 mg once daily.[24]

39.     This means that a user of the Zantac® medications like the Plaintiff would, over the course of eight (8) weeks when using the substance for its intended purpose to treat a peptic ulcer would be exposed to more than 280,000,000 ng (0.28 grams) of NDMA. A consumer like Plaintiff taking 150 mg maintenance doses of Zantac® is exposed to 889,000,000 ng (0.889 grams) of NDMA over the course of a single year.  Yet, the NDMA permissible intake limit is 96 mg per day or 0.000034 grams per year. Plaintiff was a foreseeable human user of Zantac®. The product he used reached him in the same condition it left its manufacturer; it was used as intended for intended purposes.

40.     When Valisure tested Zantac® in conditions simulating the human stomach, it detected NDMA in quantities as a high as 304,500 ng per tablet.  This would be approximately more than 3,150 times the amount that can be safely ingested daily.

41.     The dangers of Zantac® became publicly known on or about September 13, 2019 when the Valisure filings were made and disclosed, and the FDA registered and responded to them. Nonetheless, some countries and the United States took steps to protect the public from ranitidine before the US FDA acted, Health Canada, the nation's health department, compelled the cessation of distributions in Canada in September 2019.[25]

42.     Other nations including Germany, Switzerland, Australia and Italy initiated drug recalls months before the United States acted.  Singapore, Qatar, Pakistan all halted sales.[26]

---

[24] *Drug Record:  Ranitidine, Regular Type National Institutes of Health* (updated July 1, 2019), https://livertox.nih.gov/ranitidine.htm.

[25] *Information Update – Health Canada requests that companies stop distributing ranitidine drugs in Canada while it assesses NDMA:  Some products being recalled*, Cision Canada (September 17, 2019) https://www.newswire.ca/news-releases/information-update-health-canada-requests-that-companies-stop-distributing-ranitidine-drugs-in-canada-requests-that-companies-stop-distributing-ranitidine-drugs-in-canada-while-it-assesses-ndma-some-products-being-recalled-821911993.html

[26] Tom Gallen, *Ranitidine Recalls Begin In Europe As Regulators Take Action,* Pharma Intelligence (Sept. 18, 2019), https://hbw.pharmaintelligence.informa.com/RS149219/Ranitidine-Recalls-Begin-In-Europe-As-Regulators-Take-Action; *Pharmacies pull heartburn meds over contamination concerns,* Uutiset (Sept. 19, 2019),

12

43.     Some private companies promptly stopped distribution of its product, worldwide.  This was true of Sandoz, a unit of Novartis AG.[27]

44.     The FDA's statement alerting patients and healthcare professionals of NDMA found in ranitidine samples was issued September 13, 2019.  It alerted Defendants and all in the public of the concerns.[28]

45.     Even after September, the FDA was slow to act and did not recall the medication until March 2020.  In the interim, the FDA referred to an "impurity" in Zantac® as opposed to the science in testing of the product revealing that the formation of NDMA in the human body is the result of the chemical structure of ranitidine and its changes within the body and not any impurity.  Simply, the formation of Zantac® itself is defective in its design, and its structural molecular and chemical design and distribution makes it inherently dangerous, carcinogenic, and deadly to humans.

46.     Even after the revelations of September 2019, Sanofi refused for more than a month to withdraw its drug or halt its distribution.  It did so only in Canada where the government ordered that it do so.[29]

47.     For a month, Sanofi and BIP refused to act and refused to inform the public.  They also refused to modify their drug to make it safe or withdraw it.  These refusals

---

https://yle.fi/uutiset/osasto/news/pharmacies_pull_heartburn_meds_over_contamination_concerns/10977530; PB Jayakumar, *Anti-acidity drug ranitidine gives heartburn to industry and public,* Business Today (Sept. 24 2019), https://ww.businesstoday.in/sectors/pharma/anti-acidity-drug-ranitidine-gives-heartburn-to-industry-and-public/story/380916.html; *Singapore halts sales of some antacids over stomach cancer concerns,* South China Morning Post (Sept. 16, 2019), https://www.scmp.com/news/asia/southeast-asia/article/3027521/singapore-halts-sales-some-antacids-over-stomach-cancer; *Health ministry recall Zantac as a precautionary measure,* Qatar Tribune (Sept. 16, 2019), https://www.qatar-tribune.com/news-details/id/172460; Rava Rizvi, *DRAP Orders Recall of Medicine That Can Cause Cancer,* Prokpakistani (Sept. 24, 2019), https://propakistani.pk/2019/09/24/drap-orders-recall-of-medicine-that-can-cause-cancer/?utm_source=rss&utm_medium=rss&utm_campaign=drap-orders-recall-of-medicine-that-can-cause-cancer.; *UAE suspends medicine with ranitidine,* Expat Media (Sept. 24, 2019), https://www.expatmedia.net/uae-suspends-medicine-rantidine/2019/09/.

[27] Anna Edney, Carcinogens Scare Sets Off Global Race to Contain Tainted Zantac, Bloomberg (Sept. 18, 2019) and *Dr. Reddy tumbles on buzz halting all supply of Ranitidine*, Business Standards (September 23, 2019).

[28] FDA, *Statement alerting patients and healthcare professionals of NDMA found in samples of Ranitidine* (Sept. 13, 2019), https://www.fda.gov/news-events/press-announcements/statement-alerting-patients-and-health-care-professionals-NDMA-found-samples-ranitidine.

[29] Anna Edney, *Carcinogen scare sets off global race to contain tainted Zantac*, Los Angeles Times (Sept. 18, 2019), https://www.latimes.com/business/story/2019-09-18/carcinogen-scare-tainted-zantac.

occurred even though both Sanofi and BIP knew or had reason to know that unsafe and carcinogenic levels of NDMA were produced in the human body of Zantac®'s users. Numerous scientific studies disclosed this and were or should have been known to sophisticated research and pharmaceutical companies like the Defendants.[30]

48.    Zantac® was developed by GlaxoSmithKline and approved as a prescription by the FDA in 1983.[31]  Sales were the product of a significant and aggressive marketing strategy. In 1996 Zantac® became available without a prescription.[32]  Generic versions became available thereafter, but Plaintiff generally used the brand name Zantac® product.

### C.  NDMA Is Dangerous

49.    NDMA is dangerous.  It is an organic chemical that forms in both industrial and natural processes and it is a member of the N-Nitrosamine, a group of potent carcinogens.[33]  NDMA has long been known to be carcinogenic to humans and as long ago as 1979 it was known to have caused cancer in virtually every laboratory animal tested for

---

[30] See, e.g., Massimiliano Sgroi, et al., *N-Nitrosodimethylamine (NDMA) and its precursors in water and wastewater: A review of formation and removal*, 191 Chemosphere 685 (Oct. 15, 2017; Yong Dong Liu, et al., *Formation Mechanism of NDMA from Ranitidine, Trimethylamie, and Other Tertiary Amines during Chloramination: A Computational Study*, 48 Envtl. Sci. & Technology 8563 (June 26, 2014); Julien Le Roux, et al., *Chloramination of nitrogenous contaminants (pharmaceuticals and pesticides): NDMA and halogenated DBPs formation*, 45 Water Research 3164 (Mar. 26, 2011); Ruqiao Shen & Susan A. Andrews, *Demonstration of 20 pharmaceuticals and personal care products (PPCPs) as nitrosamine precursors during chloramine disinfection*, 45 Water Research 944 (Oct. 13, 2010); Giovanni Brambilla & Antonietta Martelli, *Update on genotoxicity and carcinogenicity testing of 472 marketed pharmaceuticals,* 681 Mutation Research 209 (Sept. 19, 2008; Giovanni Brambilla & Antonietta Martelli, *Genotoxic and carcinogenic risk to humans of drug-nitrite interaction products,* 635 Mutation Research 17 (Dec. 6, 2006); Zeng & Mitch, *supra* footnote 15.

[31] Write, *supra* footnote 3 at 26

[32] *Id.* At 28.

[33] *Technical Fact Sheet – N-Nitroso-dimethylamine (NDMA), Environmental Protection Agency* (Jan. 2014) https://www.epa.gov/sites/production/files/2014-03/documents/ffrrofactsheet_contaminant_ndma_january2014_final.pdf

a reaction to it.[34] A 1983 publication disclosed genotoxicity evidence of carcengenotoxicity in rats given ranitidine.[35]

50.     NDMA has been demonstrated as a cause of gastric, esophageal, stomach, biliary, hepatic, pancreatic, liver, intestinal, bladder and prostate cancer.[36]

51.     The Defendants knew or should have known of all the science that disclosed the risks and hazards of NDMA and the fact that Zantac® causes its formation in the body due to Zantac®'s chemical composition and the reaction of those chemicals within the body.   As early as 1980, consumer products with unsafe levels of NDMA and other nitrosamines were recalled by manufacturers either voluntarily or as directed by the FDA.[37]

52.     By 2004 the risk of bladder and related cancers caused by ranitidine was becoming well established in the scientific community.[38] Defendants also knew of the

---

[34] Jane Brody, *Bottoms Up: Alcohol in moderation can extend life,* The Globe and Mail (Canada) (Oct. 11, 1979); *see* Rudy Platiel, *Anger grows as officials unable to trace poison in reserve's water,* The Globe and Mail (Canada) (Jan. 6, 1990) (reporting that residents of Six Nations Indian Reserve "have been advised not to drink, cook or wash in the water because testing has found high levels of N-nitrosodimethylamine (NDMA), an industrial byproduct chemical that has been linked to cancer"); S.A. Kyrtopoulos, *DNA adducts in humans after exposure to methylating agents,* 405 Mutation Research 135 (1998) (noting that "chronic exposure of rats to very low doses of NDMA gives rise predominantly to liver tumors, including tumors of the liver cells (hepatocellular carcinomas), bile ducts, blood vessels and Kupffer cells").

[35] Brambilla et al., Genotoxic effects in rodents given high oral doses of ranitidine and sodium nitrite, 4 Carcinogenesis10, 1281-1285 (1983).

[36] G Tchernev et al, Valsartan/Hydrochilorothiazide Induced Prostate Carcinoma  in a Patient Who Subsequently Developed Melanoma, Vol 33 Journal of Biological Regulators & Homeostatic Agents, no. 3 (2019) (at https://www.researchgate.net/profile/Georgi_Tchernev/publication/333185727_Valsartanhydrochlorothiazide_induc ed_prostate_carcinoma_in_a_patient_who_subsequently_developed_melanoma/links/5d04774e458515b055d2adf3/ Valsartan-hydrochlorothiazide-induced-prostate-carcinoma-in-a-patient-who-subsequently-developed-melanoma.pdf ; Teng Zeng, oral intake of ranitidine increases urinary excretion of N-nitrosodimethylamine, 37 Carcinogenesis, Issue 6 pp 625-634 (June 2016);  Juliia Golovynska et al, Peripheral N-methyl-D-aspartate receptor localication and role in gastric acid secretion regulation; immunofluorescence and pharmacological studies, Scientific Reports Vol 8, Art No. 7445 (2018); La Vecchia et al, Nitrosamine intake and gastric cancer risk, 4 Europ. J. Cancer. Prev. 469– 474 (1995); Pobel et al, Nitrosamine, nitrate and nitrite in relation to gastric cancer: a case-control study in Marseille, France, 11 Europ. J. Epidemiol. 67–73 (1995).

[37] See, e.g., Karen DeWitt, *Carcinogen Fear Allayed*, The New York Times (July 2, 1980) (reporting recall of beer with higher levels of nitrosamines than permitted)

[38] Michaud et al, Peptic ulcer disease and the risk of bladder cancer in a prospective study of male health professionals, 13 Cancer Epidemiol Biomarkers Prev. 2, 250-254 (2004).

World Health Organization's publications in 2008 concerning NDMA and drinking water.[39]

53. Despite awareness of these publications, research findings, and undisputed science, the Defendants continued to market and promote Zantac® and ranitidine products as safe. It was not. Instead, it was defective in its design and the molecular structure of ranitidine, which contains both a nitrite and dimethylamine, which are well known to combine to form NDMA.[40]

54. Ranitidine, therefore, produced NDMA by reacting with itself and within itself in the human body. This means that every dosage and form of ranitidine including Zantac® exposes users to elevated dangerous levels of the carcinogen NDMA.[41]

### D. Failures of Defendants to Disclose

55. Despite knowledge of these circumstances, Defendants did not disclose that Zantac® exposes users to elevated levels of NDMA or that it was carcinogenic. Even after a 2016 publication in the scientific journal *Carcinogenesis* which confirmed the production of NDMA under stomach-relevant PH conditions in living persons and that during a twenty-four (24) hour period following intake of ranitidine the quantity of NDMA in urine excreted by the patient increased by 400 times from 110 to 47,600 ng."[42]

56. Even after the *Carcinogenesis* publication, Defendants did not warn the public to withdraw their Zantac® products, or in any other way disclose the risks of its continued use.

57. The FDA did not act to protect the public. This is largely because the FDA is a regulatory agency that relies on drug manufacturers or others who submit Citizens Petitions, to deliver to it new information about approved products like Zantac®. The FDA

---

[39] *Technical Fact Sheet supra* footnote 22; WHO NDMA Guidelines for Drinking-Water Quality (3rd Ed., 2008), available at https://www.who.int/water_sanitation_health/dwq/chemicals/ndmasummary_2ndadd.pdf.

[40] Citizen Petition *supra* footnote 11 at 19.

[41] *Id*. at 1–2.

[42] Zeng & Mitch, *supra* footnote 15 at 625.

does not normally conduct its own ongoing testing, but after a product is approved, requires some act to trigger its attention. The Defendants, as manufacturers of Zantac® an approved drug, are required to submit annual reports to the FDA containing information regarding the drug's safety and disclosing newly discovered risks, including those in published scientific studies.[43]

58. No disclosures were made by the Defendants. This annual report is required to include copies of unpublished reports, summaries of published reports of new toxicological findings of relevant types, and other significant publications obtained by the manufacturer concerning the ingredients in the drug.[44]

59. Defendants utterly failed to discharge this duty. Plaintiff continued to rely on representations that Zantac® was safe. These representations caused him to ingest massive quantities of ranitidine to his damage.

## First Theory: Strict Liability (Failure to Warn)

60. All allegations above are renewed here.

61. Each Plaintiff contends each Defendant had a duty to exercise reasonable care to avoid physical harm to Plaintiff by preventing the recognizable and foreseeable harm it would cause by marketing its Zantac® products, and by doing so without disclosing the known carcinogenic properties of the products and their debilitating disease-inducing and life threatening consequences for foreseeable human users. Plaintiff is one of these users. Plaintiff contends that the Defendants sold Zantac® products in a defective condition, unreasonably dangerous to consumers, including them. Defendants engaged in the business of selling the Zantac® products which they knew and expected would reach Plaintiff without substantial changes in the condition from that in which it was sold and did so reach Plaintiff. He did not misuse the product. Plaintiffs' damages are not subject to the economic loss rule.[45]

---

[43] 21 CFR § 314.81(b)(2)

[44] 21 CFR § 314.81(b)(2)(v)

[45] See *Lesiak v. Central Valley Ag.,* 283 Neb 103, 808 NW2d 67 (2012).

62.     Each Defendant is strictly liable in tort to Plaintiffs for failure to warn of the dangers of Zantac® products. At all relevant times the Defendants each knew and each failed to act upon, report to the FDA, or disclose to the public, the known property of Zantac® to development into NDMA within the human body and thereby produced, at levels far in excess of permissible dosages, dangerous, carcinogenic NDMA known to cause cancers of the stomach, liver, kidneys, bladder, pancreas, esophagus, prostate and other abdominal organs, as well as other cancers, within human users and nonhuman test subjects. As the parties who tested, developed, designed, manufactured, marketed, sold, distributed and promoted Zantac® products which were defective and unreasonably dangerous and which had been so proven in tests known to Defendants but not known to the general public, Defendants had, but breached their duty to provide adequate warnings or instructions concerning the dangerous characteristics and risks of Zantac®.[46] They did not do so.

63.     Each Defendant is charged with responsibility for having research developed, designed, tested manufactured, inspected, labeled distributed, marketed, promoted, sold, and otherwise released Zantac® into the stream of commerce. While doing so, they presented Zantac® as an approved substance that was beneficial, not harmful, to users. They disclosed no risk of:

      63.1.  Development of NDMA.

      63.2.  The risks of NDMA.

      63.3.  Development of cancer in human users.

      63.4.  The propensity to develop a substance within the human body that is carcinogenic and causes cancer.

      63.5.  The adverse consequences on health for the use of NDMA producing Zantac® including cancers requiring intensive medical intervention,

---

[46] *Stahlecker v. Ford Motor Co.*, 266 Neb 601, 667 NW2d 244 (2003) Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010), and Restatement (Second) of Torts § 402A. Also, *Jay v. Moog Automotive, Inc.*, 264 Neb 875, 652 NW2d 872 (2002)(defective design).

and posing risks of debilitation, loss of critical organs, permeant impairments, and death.

64.    The duty to warn by each Defendant was ongoing. Defendant BIP had this duty before the Sanofi Defendants, but the Sanofi Defendants as successors with joint and several successor liability and are parties with a duties and responsibilities to engage in, perform and complete independent investigations and make independent warnings, and disclosures to the public, as well to regulatory officials.  At the time manufacture by each Defendant, that Defendant could have provided the warnings or instructions regarding the risks of Zantac® but did not do so.  Despite being warned by extensive publicly accessible scientific literature, the Defendants knew or should have known as pharmaceutical companies that Zantac® creates NDMA and NDMA produces cancer in the human body. Defendants withheld this information, or they failed to investigate, study, test or promote the safety or minimize the dangers, to Zantac®  consumers who would foreseeably be harmed by Zantac®. These consumers included Plaintiff, Mr. Luedtke.

65.    The Defendants joint and several failures to discharge their duties to disclose adequate warnings to consumers proximately caused Plaintiff's cancer which resulted from carcinogenic NDMA in his body.  Plaintiff has no other predisposing factors and Zantac® was a substantial contributing cause to the development of cancer to Plaintiff's body.

66.    Neither, Plaintiff could have discovered the defects or risks associated with Zantac®. Instead, Plaintiffs relied upon the skills, superior, knowledge and judgment of the Defendants to know about and disclose serious health risks associated with their products.  They learned of this risk only when Zantac® was withdrawn from the market.

67.    Zantac®'s label does not make adequate, suitable, or required disclosures. It did not so throughout the course of its marketing from and after 2006 through March 20, 2020 when Zantac® was withdrawn from the market.

68.    The failure to warn committed by the Defendants on Zantac® labeling included:

68.1.   Noncompliance with federal law;

68.2.   Noncompliance with state law;

19

68.3.   Failure to disclose known risk associated with Zantac® ;

68.4.   False statements about Zantac®'s safety;

68.5.   Concealment of Zantac®'s dangers and risks of harm.

69.    As a direct, proximate result both Plaintiffs   suffered great mental anguish and Plaintiff sustained personal injuries, including illness, disease, need for extensive medical treatment intervention and care, special damages including loss income, loss earning capacity, medical costs and costs incidental thereto, and other special damages. He also suffered from depression, stress and mental anguish over his potential loss of life and livelihood, concern about his ability to support himself and his family going forward, and near certain loss of life expectancy.

**Second Theory: Strict Liability in Tort**

70.    All allegations above are renewed here.

71.    Defendants are strictly liable in tort to Plaintiffs for defective design of their Zantac® products.

72.    At relevant times, the Defendants engaged in the research testing, development, designing, manufacturing, marketing, selling, distributing, promoting, registering, labeling, and reporting matters related to Zantac® products and the products themselves.  These Zantac® products included the ones used by Plaintiff.  As alleged above the products were inherently and unreasonably dangerous.  They contained substances that were foreseeable known to produce extremely high levels of NDMA in the human body. NDMA is a known dangerous carcinogen. It produced, and Defendants knew it produced, renal, biliary, hepatic, intestinal, prostate, stomach, pancreatic, liver, and other cancers in the bodies of human users as reported and in scientific and medical literature, and in laboratory animals as reported in scientific testing literature, all of which were ignored and denied by Defendants.

73.    Rather than make appropriate reports and disclosures to the public, Defendants suppressed and concealed this information and diminished its availability. For example Defendants knew or should have known that a 2016 study at Stanford University

gave 10 healthy volunteers 150 milligrams of Zantac® and found that subsequent NDMA levels in their urine exceeded 47,000 nanograms.[47]

74.   Zantac® products were unreasonably dangerous when they were placed by each Defendant into the stream of commerce.  Each Defendant during the times relevant as described above ultimately controlled and supervised these actions and each Defendant did design, research, development and manufacture produce assemble, label, advertise, promote and market and sell and distribute Zantac® products used by Plaintiff. Defendant BIP described Zantac® as safe and Sanofi perpetuated this description without making any corrections.  Yet, Zantac® was known to be associated with elevated levels of cancer.

75.   The Zantac® products to which Plaintiff was exposed in which he injected and were designed made and produced by Defendants, were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate. The risks and dangers of Zantac® exceeded the benefits allegedly associated with it. Exposure to Zantac® presents a risk of harmful side effects that outweighs any potential utility stemming from its use. Zantac® reached Plaintiffs with the defects in it when placed in the stream of commerce.  Plaintiff used it as recommended and intended without changes.

76.   Defendants knew or had to reason to know that its Zantac®'s produces were defective and inherently and dangerous and unsafe when used in the manner instructed and provided by them and represented on their label, all of which existed when they placed Zantac® in the stream of commerce. The products were:

> 76.1.  Defective in design in formulation and consequently dangerous to an extent beyond which an ordinary consumer would contemplate.
>
> 76.2.  Unreasonably dangerous in that they were hazardous and posed grave risks of cancer of multiple types to foreseeable users, using the products as anticipated.
>
> 76.3.  They failed to test, investigate or study the hazards of Zantac® and its propensity to produce NDMA in the human body and to appreciate

---

[47] See Fn 15.

that NDMA would cause cancers in foreseeable users including Plaintiff.

76.4. They failed to conduct post market surveillance of Zantac® in reasonable manner and to identify risks and adjust or withdraw it from the market but instead continued to sell it.

77. At all relevant times Plaintiff used Zantac® as intended and in the appropriate foreseeable manner as consumer. Zantac® reached Plaintiff in the same condition in which left the control of each Defendant and was reasonably and responsibility used by Plaintiff.

78. Zantac® is more dangerous than alternative products that do not produce dangerous levels of NDMA in the body. Defendants knew this and knew that less risky alternatives to use as antacids were available. They also knew that using the alternatives would have prevented the harm and cancer from which Plaintiff suffers.

79. Zantac® was at all relevant times defective in design and/or formulation due to its inherent risk of producing the carcinogen NDMA and thereby rendering the drug unreasonably dangerous. Zantac® is defective because the substances of which it is compounded include inherently unstable ranitidine in molecular form containing both nitrate and dimethylamine in groups that combine to form NDMA as alleged.[48]

80. Each Defendant had a duty to use due care in designing and manufacturing Zantac® and to disclose known defects. Further, each Defendant had a duty to withhold from the market inherently dangerous products, whether the dangers were disclosed or not.[49]

81. The design defect in Zantac® existed in the drug each time each shipment left each Defendant who shipped it during the period of that Defendant's ownership and control and at the time during which Plaintiff was purchasing and using Zantac®. Zantac®

---

[48] Nebraska recognizes that FDA approval does not entitle a pharmaceutical company to blanket immunity from strict liability in tort. *Freeman v. Hoffman La-Roche, Inc.,* 260 Neb 552, 555-569, 618 NW2d 827, 835-841 (2000).

[49] Nebraska recognizes a common law duty to use due care so as to not negligently injure another person. *Wilke v. Woodhouse Ford, Inc.,* 278 Neb 800, 810, 774 NW2d 370, 379 (2009).

was expected to, and did reach, Plaintiff without a substantial change from the condition in which Zantac® was sold. It was used for its foreseeable intended purpose, in the way Defendants each recommended that it be used and for the purposes recommended.

82.     Plaintiffs each sustained the damages for which they sue was a direct proximate result of the condition in which Zantac® was marketed and sold. Each Defendant is strictly liable in tort to Plaintiff because of the defective condition in which Zantac® was placed in the stream of commerce.

83.     Defendants acted willfully and wantonly, fraudulently, maliciously. They conducted themselves with abruptness disregard for the health and safety users of Zantac® including Plaintiffs. Defendants risked the lives of consumers and users of Zantac® for profits and concealed its dangers with a profit motive to do so.

84.     Plaintiffs' damages may continue to accrue Leave is requested to amend the Complaint to state the total amount of special damages at the time of the final pretrial conference or at trial.

### Third Theory:  Negligence

85.     All allegations above are renewed here.

86.     Each Defendant owed a duty of reasonable care to all foreseeable users of their Zantac® products, including Plaintiffs, but each breached the duty of reasonable care. The breaches proximately caused Plaintiffs' damages.[50]

87.     Zantac® was available for over the counter purchase in 75 mg and 150 mg pills and by prescription for 300 mg pills. It was sold in at least these forms:

>   Zantac®
>
>   Zantac® 150
>
>   Zantac® 150 Acid Reducer
>
>   Zantac® 150 Maximum Strength
>
>   Zantac® Maximum Strength Cool Mint
>
>   Zantac® 75

---

[50] *Deviney v. UPRR,* 280 Neb 450, 786 NW2d 902 (2010).

Zantac® 75 Regular Strength

Zantac® Maximum Strength 150 Cool Mint

Zantac® (Ranitidine Injection)

Zantac® (Ranitidine Syrup)

Zantac® (Ranitidine Tablets & Capsules)

Zantac® Cool Mint

Zantac® Injection

88.     Each Defendant caused Zantac® products to be sold, distributed, packaged, labeled, marketed and promoted to Plaintiffs and other foreseeable users.  By undertaking these activities, each Defendant owed to Plaintiffs and the public the duties:

88.1.   To exercise reasonable care in the design, research manufacture marketing advertising supply for motion packaging sale and distribution, labeling, and description of its submissions to regulators of their Zantac® products.  This included the duty to undertake all steps reasonable and necessary to assure that these Zantac® products were not unreasonably dangerous to consumers.

88.2.   To exercise reasonable care in the marketing advertisement labeling and sale of Zantac® products including a duty to warn the consumers and general public of the risks and hazards associated with Zantac®, its action within the human body, its production of NDMA, the carcinogenic properties of NDMA and the contraindications, adverse effects, and life threatening damages that were likely to result from its use because of Zantac® carcinogenic properties.

88.3.   To warn of know risks and risks disclosed by scientific research.

88.4.   To withhold the product from the market.

88.5.   To exercise reasonable care and marketing and representation of the product.

88.6.   To refrain from falsifying, withholding, or manipulating unfavorable research data or fining favorable research data or results.

24

88.7.   To label its product with complete disclosures of the risks.

89.     Each Defendant breached each of these duties and was negligent by failing to fulfill each of them.  Instead, each Defendant negligently:

89.1.   Designed, formulated, labeled, marketed, promoted and sold its Zantac® products.

89.2.   Submitted, or withheld and failed to submit, relevant research information concerning the hazards and risks of Zantac® to government regulatory authorities.

89.3.   Failed to recall its Zantac®  products.

89.4.   Manufactured Zantac®.

89.5.   Designed and tested Zantac®.

89.6.   Packaged Zantac®.

89.7.   Marketed, advertised, and commercialized Zantac®.

89.8.   Failed to provide adequate instructions, guidelines or safety precautions to foreseeable users

89.9.   Failed to inform of safer alternatives known to exist.

90.     These negligent acts and omissions occurred and were committed by each Defendant. Defendants did so when they each knew of the risks associated with Zantac® including the development NDMA, carcinogenetic consequences on the human body, and the development of lethal cancers including renal cancer.

91.     Each Defendants conduct was negligent, but each also acted recklessly.  Each made conscious decisions to withhold action and to decline to withdraw, recall, relabel, warn, inform regulators, or otherwise take appropriate steps to protect the public and foreseeable users including Plaintiff.

92.     As a proximate result of these acts and omissions, Plaintiffs sustained the damages for which they sue.

**Fourth Theory:  Breach of Express Warranty**

93.     All allegations above are renewed here.

94.     Defendants' public statements descriptions and promises relating to Zantac® constituted express warranties that Zantac® was safe and effective for its intended use and was designed and sold to prevent or relieve heartburn associated with acid indigestion and a sour stomach, or as a reaction to certain ingested foods or beverages.

95.     Each Defendants expressed warranties were made in the form of:

95.1.   Public written and verbal assurances that Zantac® was safe.

95.2.   Press releases and media statements describing Zantac® and its safety.

95.3.   Verbal assurances made by Defendants' marketing personnel about the safety of Zantac® including statements made to pharmacists, physicians, and other health care providers for the purpose of having those statements repeated without investigations.

95.4.   On the Zantac® box, and label and packaging materials.

96.     In each and all these materials, Zantac® was promoted as the best treatment available as an antacid and as a safe H2 blocker.  Specific statements by Defendants about Zantac® included the statement that:

96.1.   It relieved heartburn associated with acid indigestion and sour stomach and heartburn associated with eating certain foods:

96.2.   Should not be used if one had suffered an allergic reaction to ranitidine or other acid reducers or had kidney disease except under a physician's advice, or if a person considering its use was pregnant or breast feeding, in which case it should be used only after asking a health professional.

96.3.   Active ingredients included Hypromellose, magnesium stearate, microcrystalline cellulose, synthetic red iron oxide, titanium dioxide, triacetin.

These descriptions of the product were made by both BIP and by the Sanofi Defendants.[51]

---

[51] It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the

97. The package inserts for Zantac® described its clinical pharmacology without any description of the development of NDMA or risks of carcinogen. Indeed, the package insert affirmatively represented that:

> 97.1. Zantac® "does not affect pepsin secretion and has no significant effect on pentagastrin-stimulated intrinsic factor secretion and little or no effect on fasting or postprandial serum gastrin".
>
> 97.2. Zantac® should be adjusted in patients with impaired renal function and caution should be observed in patients with hepatic dysfunction but there was no indication that it should not be used in such patients.
>
> 97.3. The package inserts further affirmatively represented "there was no indication of tumorigenic or carcinogenic affects in life-span studies in mice and rats at oral dosages up to 2,000 mg/kg/day".

98. While adverse reactions were described, none of the adverse reactions included the development of cancers even though laboratory and human studies had provided abundant contrary data. These statements were made about Zantac® by Defendant GlaxoSmithKline as late as April 2009, and thereafter within the period of the statute of repose. The foregoing statements were affirmations of fact and descriptions of the product.[52] Plaintiffs reasonably relied on Defendants' affirmations of fact and descriptions though they were not accurate. Instead, Zantac® produces lethal carcinogenic and dangerous levels of NDMA in the human body which in turn produces life threatening, and fatal cancers.

99. Each Defendant breached the foregoing express warranties because in each instance the warranties were incomplete, not placed in proper context in the light of the things that were said about the product and were false.[53]

---

goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty. § 2–313(2). *Hillcrest Country Club v. N.D. Judds Co.,* 236 Neb 233, 461 NW2d 55 (1990).

[52] Neb UCC § 2-313(a) and (b).

[53] Whether or not an express warranty arises under the UCC and whether express or implied warranties are breached are questions of fact to be determined by the trier of fact. See *Hillcrest Country Club v. N.D. Judds Co.,* 236 Neb

100.    Plaintiffs justifiably relied on the express warranties and representations of each Defendant as they purchased the product and Plaintiff used it over the years.  When decision purchases were made, reliance was placed upon the expressed warranties of the Defendants.  The Defendants were merchants with respect to products like and including Zantac® , and Plaintiffs were members of the consuming public who had to and did rely upon them for their knowledge, experience and expertise in formulated pharmacological drugs like and including Zantac® .[54]

101.    The harm caused by Zantac®  far outweigh its benefits rendering it more dangerous than an ordinary consumer or user, including Plaintiffs, would expect, and more dangerous than available alternative products.

102.    As a direct proximate result of the acts and omissions of the Defendants, Plaintiffs sustained the damages for which they sue.

### Fifth Theory:  Breach of Implied Warranties

103.    All allegations above are renewed here.

104.    Each Defendant placed Zantac®  on the market and in the stream of commerce with the implied warranty that Zantac®  was merchantable and was also fit for its intended purpose as a medication that would prevent or reduce antacid, and the adverse consequences of stomach acids and sour stomach.  Furthermore, Plaintiffs relied upon the implied warranties that Zantac®  was fit to pass in the over-the-counter pharmaceutical trade without objection as to its quality and perform as represented.

105.    Defendants' implied warranties were breached.  The product, Zantac® , was not of merchantable quality and not safe and fit for the use for which it was intended.  It was not fit for use as an antacid because it is carcinogenic and causes to be introduced lethal cancer-producing levels of NDMA in the system.

---

233, 461 NW2d 55 (1990) (creation of express warranty); *Ruskamp v. Hog Builders, Inc.,* 192 Neb 168, 219 NW2d 750 (1974) (whether there has been breach of warranty, express or implied, is largely question of fact).

[54]  *Id.*; Neb UCC  § 2-318.

106. The harm caused by Zantac® far outweigh its benefits rendering it more dangerous than an ordinary consumer or user, including Plaintiffs, would expect, and more dangerous than available alternative products.[55]

107. As a direct, proximate result of these breaches of warranty, Plaintiffs sustained the damages for which they sue.

### Sixth Theory: Nebraska
### *Deceptive Trade Practices Act, Neb Rev Stat §§ 87 – 301 et. seq.*

108. Allegations above are renewed here.

109. Zantac® is an article within the meaning of *Neb Rev Stat § 87-301(3)* and it contains products that act as carcinogens in the human body. Zantac® was represented as safe. It did so with television "Fireman" commercials, and with other advertisements.[56]

110. Each Defendant engaged in deceptive trade practices when in the course of its business it:

110.1. Represented that Zantac® had approval characteristics, ingredients, uses, benefits or qualities that it did not have.

110.2. By implication that it was not carcinogenic though it was.

110.3. Zantac® was of superior quality and safe for use as an antacid or an acid reducer and for other purposes expressed on its label and package inserts when it was not because it was carcinogenic.

110.4. Made false statements concerning its safety and concealed it carcinogenic properties.

111. Defendant's acts and omissions constitute deceptive trade practices within the meaning of the Nebraska *Deceptive Trade Practices Act.*

---

[55] Proof of negligence establishes breach of implied warranty. *Adams v. American Cyanamid Co*., 1 Neb App 337, 498 NW2d 577 (1992). *El Fredo Pizza, Inc. v. Roto-Flex Oven Co,* 199 Neb 697, 261 NW2d 358 (1978); *Christensen v. Eastern Nebraska Equip Co.,* 199 Neb 741, 261 NW2d 367 (1978).

[56] "Fireman" video of September 2015 available at
https://www.google.com/search?biw=1280&bih=557&tbm=vid&ei=OIKkXuXcKMXWtQbswbCAAQ&q=zantac+
commercial+tv+2015&oq=zantac+commercial+tv+2015&gs_l=psy-
ab.12...14961.23044.0.25020.5.5.0.0.0.0.180.732.0j5.5.0....0...1c.1.64.psy-
ab..0.1.180...33i299k1j33i160k1.0.GNXJPv1_srI   - last visited 4.25.2020, and at
https://www.ispot.tv/ad/AkgC/zantac-firefighter  - last visited 4.25.2020.

112.    Each Plaintiff is a person damaged by the deceptive trade practices of the Defendants and entitled to relief in the form of monetary damages as his purchased and used Zantac®  and was diagnosed with cancer caused by it within four (4) years of this action.  During those four (4) years, Zantac®  was sold by the Sanofi Defendants and Defendant BIP, and they engaged in the deceptive practices at issue during this time.[57]

### Seventh Theory:  Nebraska *Consumer Protection Act*

113.    All allegations above are renewed here.

114.    At all relevant times Defendants were persons within the meaning of the Nebraska *Consumer Protection Act.*[58]   Defendants were engaged in trade or commerce by selling Zantac®  in Nebraska to members of the public.[59]

115.    Defendants engaged in unfair methods of competition and unfair and deceptive practices in the sale of Zantac®  because they concealed the fact that it was a carcinogen and did not sell it truthfully.  Their conduct violated the *Act.*[60]

116.    Plaintiffs were injured in their persons, but also injured in their business or property by reason of the wrongful action of the Defendants.  Accordingly, they are entitled to maintain an action for civil damages pursuant to *Neb Rev Stat* § 59-1609 and in doing so are entitled to recover the actual damages sustained, the costs of suit, and reasonable attorney's fees, together with a penalty not to exceed $1,000 per wrongful act of each Defendant.[61]

### First Claim:  Mr. Luedke

117.    All allegations above are renewed here.

118.    Plaintiff invokes all theories described above.

119.    As a direct proximate result of each and all wrongful acts of each Defendant, Plaintiff sustained the general and special damages described above.  He contracted cancer

---

[57] *Neb Rev Stat* § 87-303.10.
[58] *Neb Rev Stat* § 59-1601(1).
[59] *Id* at 59-1601(2).
[60] *Neb Rev Stat* § 59-1602.
[61] *Neb Rev Stat* § 59-1609.

and is both temporarily and permanently impaired and suffers physical and emotional pain and anguish which will be ongoing and lifelong.

120.    Plaintiff seeks general and special damages from each and all Defendants jointly and severally.  His general damages include  temporary and permanent loss of stamina, strength, ability to perform  his work  and activities of daily living, debilitation of his health and quality,  lost earnings and lost earning capacity,  limiting and disabling healthcare interventions for his cancer, enhanced of vulnerability to viruses and diseases including the novel Corona virus known as Covid-19, emotional distress, anxiety, depression, fear of uncertainty, and probable loss of life expectancy. His special damages include lost earnings and lost future earnings, medical care costs and expenses, costs for medications and treatments, travel and related expenses for medical care, and the need for legal expenses. His special damages are accruing. Leave to amend this Complaint to state the special damages as of the time of the final pretrial conference, or at trial, is requested.

## Second Claim:  Mrs. Andersen

121.    All allegations above are renewed here.

122.    As a direct proximate result of the foregoing acts and omissions, Juliet Andersen, spouse of Gary Luedtke, sustained general damages because of the loss of her husband's care, comfort, companion, society, support, services, advice, counsel, love and affection and caregiver's injuries.  These are consortium[62] damages which she suffers as a derivative result of her husband's injuries.  Mrs. Andersen seeks general damages.

## Requests for Relief

On the foregoing basis, Plaintiffs seek:

123.    For Mr. Luedtke, general and special damages on Plaintiff's first claim.

124.    For Ms. Andersen  judgment on their second claim for general damages.

---

[62]  "We have defined consortium to mean comfort, society, love, and protection. *[Citations omitted.]* We have long held that a husband may recover for the loss of his nonfatally injured wife's consortium, *Omaha & R. V. R. Co. v. Chollette,* 41 Neb 578, 59 NW 921 (1894), and permit a wife to recover for the loss of her nonfatally injured husband's consortium, *Anson v. Fletcher,* 192 Neb 317, 220 NW2d 371 (1974)." *Guenther by Guenther v. Stollberg*, 242 Neb 415, 416, 495 NW2d 286, 286 (993).

31

125.    For both Plaintiffs on each claim, taxable costs, prejudgment interest as allowed by law and attorneys' fees.

126.    Plaintiffs request leave to amend this Complaint to detail their special damages at the time of the final pretrial conference.  They also request leave to amend this Complaint in the event a motion to dismiss is sustained due to a defect in the pleading.

### Jury Demand

127.    Plaintiffs respectfully demand trial by jury.  If this case is not tried in the state court system in Nebraska Plaintiffs demand trial in Lincoln, Nebraska nearby where Plaintiffs reside, and the location most convenience for medical providers most and witnesses. In the federal system this case would be related to MDL 2924.

September 4, 2020.

Gary Luedtke and Juliet Andersen,
Plaintiffs

By: */s/ David A. Domina*
David A. Domina, #11043
Domina Law Group pc llo
2425 S. 144th Street
Omaha, NE 68144
(402) 493-4100

*Plaintiffs' Lawyers*

32